## Weinbach's Appeal.

334

Argued October 9, 1934.   Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Ben H. Giffen,* with him *Aaron Rosenzweig,* for appellant.

*Joseph Schutzman,* for appellees.

Opinion by Mr. Justice Schaffer, November 26, 1934:

This is an adoption proceeding. The mother, who is unmarried, seeks to recover her child from the persons who have custody of it and who present the petition for its adoption. She gave birth to the baby in the Salvation Army Home on August 5, 1932, and remained in the home with the child for seven weeks following its birth. On the day she left, September 28, 1932, she executed a paper in which she said: "I, Dorothy Weinbach, mother of Marilyn, do hereby release my said child Marilyn Weinbach to the Pittsburgh Bureau for Jewish Children, and do hereby further agree that the Pittsburgh Bureau for Jewish Children shall be privileged to place out for adoption said child Marilyn Weinbach, using its own discretion as to the placement; at the proper time I do further hereby agree to sign the necessary consent for adoption upon the request of the Pittsburgh Bureau for Jewish Children. If said Marilyn Weinbach, prior to adoption, should for any reason need the attention of a social agency or if she should be found ineligible for adoption, I hereby agree to be responsible for said child Marilyn Weinbach, and to coöperate with the Pittsburgh Bureau for Jewish Children in making other plans."

On the same day this paper was signed, the child was delivered to the appellees, Aaron Gusky and Anna Gusky, husband and wife, for the purpose of adoption by them, and on August 15, 1933, they presented their petition to the court below praying for a decree of adoption. Objection to the decree was made by the mother, and, after hearing in which testimony was taken, the court entered a decree of adoption based upon the findings that the child had been abandoned by its mother and that its welfare will be promoted by the adoption. From this decree Dorothy Weinbach appeals.

The first question to be determined is whether review is by this court. An examination of the acts regulating ap-

pellate practice shows that it is. The jurisdiction of the Superior Court is limited to the matters expressly conferred upon it by statute: Duquesne City v. Fincke, 269 Pa. 112; Com. v. Long, 276 Pa. 154. The Act of March 2, 1923, P. L. 3, No. 2, 17 P. S., section 185, which is the most recent enactment relating to appeals to the Superior Court from the Orphans' Court, does not cover such a case as this. Except, therefore, where the adoption proceeding appealed from was in the Municipal Court of Philadelphia, which has jurisdiction of such matters by the Act of May 11, 1923, P. L. 201, 17 P. S., section 693, (see McCann's Adoption, 104 Pa. Superior Ct. 196), and from which the appeal would be to the Superior Court, appeals in adoption cases lie only to this court, these being matters in which, outside of Philadelphia, original jurisdiction is vested exclusively in the orphans' court under the Act of April 26, 1929, P. L. 822, 1 P. S., section 1.

The next question for consideration is whether there is any right of appeal in this class of cases. Adoption is a purely statutory proceeding. There was no such thing as adoption known to the common law: Ballard v. Ward, 89 Pa. 358; Thompson's Adoption, 290 Pa. 586. The Act of April 4, 1925, P. L. 127, 1 P. S., section 1, regulating adoption, does not provide for an appeal and, therefore, the scope of our review is that exercisable on certiorari: Lewis's App., 6 Sadler 79, 10 Atlantic Rep. 126; Von Moss's Election, 219 Pa. 453; Young's Adoption, 259 Pa. 573. Consequently, the only matters to be inquired into are whether the court below exceeded its jurisdiction or its proper legal discretion: Nomination Certificate of Robb, 188 Pa. 212; Sterrett v. MacLean, 293 Pa. 557; Yancoski's App., 313 Pa. 461. In reviewing the court's decision, under the provisions of the Act of April 18, 1919, P. L. 72, 12 P. S. section 1165, we take into consideration the evidence which, according to the terms of the statute, is brought up by the writ of certiorari "with like effect as upon an appeal

from a judgment entered upon a verdict of a jury in an action at law." This requires us to examine the testimony to determine whether there is any evidence to sustain the findings of fact: Plains Township Election Returns, 280 Pa. 520; Walker's App., 294 Pa. 385; Bangor Electric Company's Petition, 295 Pa. 228.

The Adoption Act of April 26, 1929, P. L. 822, 1 P. S. section 2, provides for the consent, "(c) Of the parents or surviving parent of the person proposed to be adopted, except that, in the case of an illegitimate child, the consent of the mother only is necessary, unless the father has acknowledged such child, but the consent of a parent who has been adjudged a lunatic or habitual drunkard, or who has abandoned the child, is unnecessary, provided such fact is proven to the satisfaction of the court or judge hearing the petition, in which case such court or judge shall so find as a fact." The act then provides for instances where the person to be adopted has no father or mother, in which event consent is required of the legal guardian and of the person or persons having the legal custody of the child. None of these consents is required however where, as here, the court has found as a fact, as the act specifies, that the child has been abandoned.

It is to be noted that the Bureau for Jewish Children never had the custody of the child. It was in the custody of its mother in the Salvation Army Home from the time of its birth until September 28th, on which day the mother left the home and the baby was delivered into the custody of the appellees, who have had it ever since. The court below correctly found that the bureau never had actual custody of the child. This disposes of the argument of appellant that consent of the bureau was necessary. It was not, even if there had been no abandonment.

In the paper which she signed appellant gave up her rights to the child and authorized its adoption, agreeing to sign the necessary consent thereto. On the day she

executed the paper she abandoned the infant to those who received it for adoption. She has never provided for it and made no claim for it for four months after she gave it up. As stated by the court below, when the surrounding circumstances are taken into account, the reasons for the abandonment are plain. Expecting to give birth to the child, she left her home in Ohio and came to Pittsburgh with the purpose of concealing the birth of the child from her parents and every one else whom she knew. She registered in one hospital under an assumed name. This was discovered and she was given asylum by the Salvation Army under another assumed name. After the birth of the infant, she could not take it home with her without divulging to her parents, what had happened, as she feared their judgment. They do not know yet that she has borne a child. After she reached home, she wrote a letter to a person connected with the bureau in which she volunteered the statement that she "realized to the fullest extent" what she was doing when she signed the paper for the adoption of the child, and that she knew it was the only thing left for her to do. When she left the Salvation Army home, she said she had absolutely no money to support the child and wanted it adopted. She declared she knew she was giving it up. The plan which she now has in mind for the child, if it should be given to her, is to put it in a foundling institution in Ohio.

The court below in its opinion says: "There is no evidence in this case that would lead any person to believe that Dorothy Weinbach intended anything but the total abandonment of her child on September 28, 1932, when she consented to its delivery to this agency for the purpose of concealing its identity from her father and mother and from every person else. She abandoned her child at the Salvation Army Home in Bellevue and was glad to get rid of her because she wanted to go home." She either had to abandon the child or acquaint her parents with its existence. The court con-

cluded that the abandonment was fully established and that the mother is wholly without means to support her child. The evidence shows full warrant for the findings. There can be no question that the welfare of the child will be best promoted by its adoption by the appellees, who are worthy people, childless themselves, who have given it the best of care and who are of ample means to support it.

In McCann's Adoption, 104 Pa. Superior Ct. 196, it was held that an averment that the mother had left the child in an institution and executed a document very similar to the adoption agreement which appellant signed was a sufficient averment of abandonment. In the instant case, the facts to support abandonment are much stronger. The whole course of conduct of appellant shows her purpose to rid herself of the child. What was said in Winans v. Luppie, 47 N. J. Eq. 302, 304, 20 Atl. 969, is worthy of repetition as indicating the wise view of cases of this class where the facts are as shown here: "The statutory notion of abandonment does not necessarily, we think, imply that the parent has deserted the child, or even ceased to feel any concern for its interests. It fairly may, and in our judgment does, import any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claim to the child. Such a purpose, clearly manifested, certainly forms a more reasonable ground for permitting judicial discretion to decide whether another may assume these claims and duties than does the signature of the parent, which a mere impulse may induce. It does not follow that the purpose may not be repented of, and in proper cases all parental rights again acquired, including this statutory right of preventing adoption by withholding consent; but, when once the abandonment is shown to have existed, it becomes a judicial question whether it really has been terminated or can be, consistently with the welfare of the child. When, in pursuance perhaps

of the abandonment, new ties have been formed and a new station in life has been taken by the child, it might be unjust that, solely because of the parents' caprice, legal sanction should be refused to the new conditions. Under such circumstances, a court might lawfully deem the abandonment irrevocable, so far as the claims of the parent were concerned."

The decree is affirmed at appellees' cost.