Hazuka's Case.

Argued October 1, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Harry Bowytz,* with him *Louis Bowytz,* for appellant.

*T. F. Ryan,* with him *Joseph H. Bialas,* of *Bialas & Ryan,* and *John J. O'Donnell,* for appellees.

OPINION BY MR. JUSTICE STERN, November 23, 1942:

This appeal is by Catherine Hazuka, the mother of Antoinette Hazuka, a child now four years of age, from an orphans' court decree adjudging that Antoinette should become the adopted child of Mr. and Mrs. William J. Tyrrell. Catherine, who was unmarried, did not consent to the adoption, but the court found that she had abandoned her child. The Act of April 4, 1925, P. L. 127, section 2 (c), provides that the consent of a parent who has abandoned the child is unnecessary, "provided such fact is proven to the satisfaction of the court or judge hearing the petition, in which case such court or judge shall so find as a fact." It is the court's finding of abandonment that is here challenged as error.

The child was born at the Roselia Foundling Asylum and Maternity Hospital in Pittsburgh on October 27, 1938, and remained there until April 6, 1940, when it was placed by the Asylum in the custody of the Tyrrells. Dur-

ing that period Catherine visited the child at irregular intervals but contributed nothing whatever toward its support except an occasional bit of clothing. She lived with her father and two sisters and worked by the day as a domestic. The Asylum does not keep children after the age of eighteen months and therefore advised Catherine, by a letter of January 23, 1940, that she would have to make some plan to have the child removed by April 27, 1940. In response to this letter Catherine came to the Asylum on March 16, 1940. It was suggested to her that she apply to the Juvenile Court or the Catholic Charities or some other social agency so that the child might be placed in a foster home where she could visit it as formerly. She rejected this suggestion but could formulate no plan of her own. Accordingly, after some discussion, she signed the following document: "I, Catherine Hazuka, mother of a female infant child aged sixteen months named Antoinette born at Roselia Hospital, do hereby surrender and intrust to the Roselia Foundling Asylum and Maternity Hospital in the City of Pittsburgh for the period of life the management and control of such child, and agree to pay for same until legally adopted, and do hereby assign to and invest said corporation with the same powers and control over said child as those of which I am possessed. [Signed] Catherine Hazuka. Signed in presence of Sister Miriam Teresa this 16th day of March, 1940." Sister Teresa testified that Catherine herself filled in the blanks on this form, including the words "the period of life." Catherine asserts that she understood from Sister Teresa that if she wanted her child back she could always get it by court proceedings and that is the reason she signed the paper, but this is not confirmed by Sister Teresa who says, on the contrary, that the meaning of the document was explained to Catherine. Thereafter, for the period of a year, Catherine did not visit the Asylum or inquire further about the child (which had meanwhile been placed with the Tyrrells) except once, on February 2, 1941, when she

came to learn how it was getting along, and, being told that it had been well placed, made no demand in regard to it, nor offered any suggestion as to its support. In November, 1941, she refused to sign a formal consent to the adoption by the Tyrrells, saying she would like to place the child with a certain family who operated a roadside inn, but, again, indicated no willingness to provide for it.

Abandonment may occur in a number of ways. It may be effected by a formal legal instrument or merely by conduct evincing a settled purpose to forego all parental duties and relinquish all parental claims. It is a matter largely of intention to be ascertained from the circumstances, and whether or not a child has been abandoned is a question of fact. In the present case it was proved to the satisfaction of the court that abandonment had occurred, and if there is evidence to support that finding it must be sustained by this court: *Weinbach's Appeal,* 316 Pa. 333, 175 A. 500. Here there was such evidence. The document of March 16, 1940, was in itself a complete renunciation of "management and control", as well as parental "powers", for the entire "period of life", and there is the added fact that the mother, although a wage earner, has never contributed a single penny to the child's support, nor ever offered any constructive plan whereby it could properly be taken care of. It is true that she made protestations from time to time of her desire to keep the child, but her actions, speaking louder than words, show—at least so the orphans' court found—that she had no real intention of assuming any parental responsibility in regard to it. While abandonment is not necessarily irretrievable, and in proper cases the rights and obligations previously renounced may be resumed, it is also true, as said in *Winans v. Luppie,* 47 N.J. Eq. 302, 304, 20 Atl. 969, 970, cited in *Weinbach's Appeal,* 316 Pa. 333, 339, 175 A. 500, 502, that "When, in pursuance perhaps of the abandonment, new ties have been formed and a new station in life has been taken by the child, it might be unjust that, solely because of the par-

ents' caprice, legal sanction should be refused to the new conditions." The Tyrrells have had possession of the child, following the abandonment by its mother, since April 6, 1940, have given it loving care, and have won its affection to such an extent that the court below states that to separate it from them now and to refuse to allow them to adopt it "would be ruthless beyond description."

The decree is affirmed; appellees, however, to pay the costs.