## Findlay Adoption

*A. Sidney Johnson* and *MacLee Henney,* for petitioner.

*Raymond E. Larson,* for respondents.

VAN RODEN, P. J., June 25, 1947.—This is a petition to vacate and set aside a decree of adoption entered by this court on March 4, 1946, it being alleged that said decree "was improvidently entered, without due notice, and without the consents required by law". Pursuant thereto, on May 27, 1946, a citation to show cause was granted on the adoptive parents, returnable June 10, 1946. By stipulation of the parties, the matter was continued from time to time. Upon the filing of a responsive answer denying the material allegations of the petition, hearings were held on November 18, 1946, and April 28, 1947, and oral argument and written briefs were submitted by counsel on June 12, 1947.

From the testimony adduced at the aforesaid hearings, and from all the other competent evidence in the case, the court makes the following

## Findings of fact

1. The name of petitioner is Mary E. Westlake, who is the maternal aunt of the adopted child. She lives at 530 Buckeye Street, Marysville, Ohio, in a six-room bungalow, which she owns subject to a non-interest-bearing mortgage held by her brother, Edward B. Westlake, Jr., one of respondents herein. She lives there with her father, Edward B. Westlake, Sr., the maternal grandfather of the adopted child. Petitioner is approximately 40 years of age, and is employed as a school teacher at an annual salary of $1,650. She is presently unmarried, but is engaged, and is planning to be married in the near future. She desires the custody of the adopted child, but does not desire to adopt the child herself, or to have the child adopted by anyone.

2. The names of respondents are Edward B. Westlake, Jr., and Zelda T. Westlake, his wife. They are the adoptive parents of the child in question. Said Edward B. Westlake, Jr., is also the maternal uncle of the adopted child, and is the brother of petitioner. Respondents live at 307 Lincoln Avenue, Manoa, Hav-

erford Township, Delaware County, Pa., in a single six-room home which they own, and which is unencumbered. They were married on June 6, 1929, and they have two children of their own: Robert, who is now 11 years of age, and Edward, who is now 13 years of age. The annual income of the said Edward B. Westlake, Jr., is in excess of $5,000 per year.

3. The name of the adopted child is now, by virtue of the decree of adoption, Sarah Jane Findlay Westlake. Prior to the adoption her name was Sarah Jane Findlay. She was born August 19, 1940, at the Veterans Hospital, Chillicothe, Ohio, and is now almost seven years of age. She has lived in the home of respondents since September 15, 1942, and is a pupil at the Manoa grade school.

4. The name of the natural mother of the adopted child is Ada Ruth Westlake Findlay, who died on March 15, 1942.

5. The name of the natural father of the adopted child is Edgar Elliott Findlay, who died on March 29, 1942.

6. After the death of the child's natural mother, the natural father turned the custody of the child over to Ada M. Westlake, the maternal grandmother of the child.

7. On April 2, 1942, after the death of the natural father, as aforesaid, the said Ada M. Westlake was appointed guardian of the person and estate of the said child by the Probate Court of Union County, Ohio.

8. The estate of the said minor child, consisting principally of the proceeds of a policy of insurance on her father's life, was turned over to the grandmother as guardian, and she was granted by the aforesaid probate court an allowance of $5 per week on account of the child's maintenance. The present value of the said estate is approximately $5,800.

9. In September 1945 the said Ada M. Westlake was seriously ill and in need of a surgical operation. Before

entering the hospital, being apprehensive over the welfare of the child, she requested respondents to take the child into their home, and on September 15, 1945, with the consent of all parties concerned, the respondents took the child from Marysville, Ohio, to their home in Manoa in this county.

10. Respondents returned with the child to Marysville, Ohio, for a visit at Christmas time, 1945. At that time the said Ada M. Westlake had returned from the hospital where it was determined that she had an incurable cancer, and it was apparent that her death was imminent. During that visit, the said Ada M. Westlake expressed to respondents her belief that the child would be better off in their care than elsewhere, and she requested them to keep the child in their home and to adopt her. When petitioner learned of such conversation she expressed her disapproval to any adoption of the child by respondents.

11. When respondents concluded their visit on or about January 1, 1948, they returned to their home in this county, bringing the child with them. This was done with the full knowledge and approval of the maternal grandmother, and also of the maternal grandfather and petitioner, who assisted in packing the child's clothing and toys to take with her.

12. Shortly after their return to this county, respondents notified petitioner of their intention to "go ahead with their plans" concerning the child.

13. The said Ada M. Westlake died February 13, 1946.

14. On February 15, 1946, petitioner applied to the Probate Court of Union County, Ohio, for the appointment of herself as guardian of the person and estate of the said child. The hearing on said application, originally scheduled for February 21, 1946, was continued until March 7, 1946, upon request of the Ohio counsel for the said Edward B. Westlake, Jr., it being stated to the court that the said respondent desired to

attend the hearing, but could not be in Marysville, Ohio, before such date.

15. On February 21, 1946, respondents filed in this court a petition for the adoption of the said child, and a hearing thereon was duly scheduled for March 4, 1946. No formal notice of the filing of the said petition or of the said time of hearing was sent to any of the child's relatives in Ohio.

16. On March 4, 1946, upon presentation of evidence fully sufficient to sustain all the allegations of the adoption petition, this court entered a decree of adoption of the said child by the said Edward B. Westlake, Jr., and Zelda T. Westlake, his wife.

17. At said adoption hearing, the said Edward B. Westlake, Jr., informed the court that the said Mary E. Westlake (present petitioner) was opposed to the adoption of the child, and that she was applying to the Ohio court for appointment as guardian.

18. Immediately after the said hearing and entry of decree of adoption, the said Edward B. Westlake, Jr., wrote to the said Mary E. Westlake, informing her that the adoption had been effected.

19. On March 7, 1946, the said Edward B. Westlake, Jr., did not appear at the guardianship hearing in Ohio, and did not contest that matter. On that date, the Ohio court appointed the said Mary E. Westlake as the guardian of the person and estate of Sarah Jane Findlay.

20. On May 27, 1946, the instant petition to vacate and set aside the aforesaid decree of adoption was filed by petitioner, the said Mary E. Westlake. Her father, Edward B. Westlake, Sr., signed a joinder to the petition.

21. The child is healthy, happy, and contented in the home of respondents, who love and care for her the same as they do their own children.

22. The home of respondents is physically preferable to that of petitioner, and the moral training that the

child will receive in the home of respondents is at least equal to that which she would receive in petitioner's home. Respondents are better able financially to support, maintain, and educate the child, and they have expressed their willingness to do so at their own expense, whereas it may be necessary for petitioner, if she should take the child, to draw upon the child's estate for such support, maintenance and education.

## Discussion

The first question to be considered is the jurisdiction of this court to grant a decree of adoption of this child. The Adoption Act of April 4, 1925, P. L. 127, sec. 1, as amended April 26, 1929, P. L. 822, sec. 1, and June 5, 1941, P. L. 93, sec. 1, 1 PS §1, provides that:

"It shall be lawful for any adult citizen of this Commonwealth residing therein, desirous of adopting any person . . . to present his or her petition to the orphans' court . . . of the county where he or she may be resident, or of the county in which the person to be adopted is a resident. . . ."

In other words, an adoption petition may be presented to the orphans' court of the county where petitioners are resident or the person to be adopted resides: In Re Saunders' Adoption, 13 D. & C. 755 (1930). But the statutory designation of the county in which the petition may be filed goes to the question of venue rather than jurisdiction in its strictest sense. The fundamental question is whether the statute can be legally effective to create the status of adoption unless the Commonwealth has proper jurisdiction over the persons involved. Although the statute refers to residence rather than domicile, and the word "residence", as used in an earlier adoption statute, has been construed to include both permanent and temporary residence in the Commonwealth: In Re Brown's Adoption, 25 Pa. Superior Ct. 259 (1904) ; a serious question of constitutionality may arise with respect to the creation

of the adoption relation between persons who are not domiciled in this State. See Wathen v. Ugast et al., 143 F. (2d) 160 (1944), where it was said:

"Regardless of the intent of the Code, no court can validly dispose of a child by adoption proceedings unless it has jurisdiction of the child or of the person who is legally entitled to its custody."

See Annotations, 73 A. L. R. 978 and 154 A. L. R. 1191.

As stated in A. L. I. Restatement of the Law of Conflict of Laws, §142:

"The status of adoption is created by either: (a) the law of the state of domicil of the adopted child; or (b) the law of the state of domicil of the adoptive parent if it has jurisdiction over the person having legal custody of the child or if the child is a waif and subject to the jurisdiction of the state."

Applying this principle to the facts of the instant case, it is unquestioned that respondents (petitioners in the adoption proceedings) have been legally domiciled in Delaware County, Pa., for many years, and that the child has lived here since September 15, 1945. Accordingly, if the residence of the child in this county and State amounts to domicile, *or* if the persons having legal custody of the child are domiciled here, then the jurisdiction of this court to create the status of adoption has been fully established.

Thus, it is necessary for the court to determine who had legal custody of the child at the time of the adoption proceedings. It must be remembered that at such time neither parent of the child was living, that the legal guardian of the child had also died, and that no successor guardian had yet been appointed. At such time, petitioners in the adoption proceedings undoubtedly had actual custody of the child. When we trace the chain of custody, we find from the evidence that the father of the child, after her mother's death, voluntarily turned the custody of the child over to the mater-

nal grandmother. After the death of the father and the appointment of said grandmother as legal guardian of the person, as well as the estate, of the said minor, legal custody was undoubtedly in said grandmother. In September 1945 the said grandmother, realizing the seriousness of her illness, and gravely concerned over the future welfare of the child, requested adopting petitioners to take the child into their home. Being with the full consent and approval of the legal guardian, their possession of the child was accordingly lawful ab initio. When, in December 1945, it was apparent to everyone, including the grandmother, that her death was imminent, she requested the adoptive petitioners to keep the child with them and to adopt her. Therefore, when the grandmother died on February 13, 1946, adoptive petitioners were in lawful possession of the child, and such lawful possession amounted to legal custody against all the world until such question of legal custody was otherwise adjudicated by a court of competent jurisdiction: Daisey's Adoption, 19 D. & C. 660, 668 (1933). Accordingly, the court finds that adopting petitioners (respondents herein) had legal custody of the child at the time the adoption petition was presented and the hearing held thereon, that said adoptive petitioners were legally domiciled in this county and State at that time, and that this court had jurisdiction to decree the adoption.

A similar conclusion upon a somewhat analogous set of facts was reached in Daisey's Adoption, supra. In that case, an illegitimate child who had been living with her mother in New York was, after the mother's death, turned over by her stepfather, in whose home she had been living, to her aunt, who took the child to Hartford, Conn., and later voluntarily delivered the child to a friend of the family at Audubon, Montgomery County, Pa. In holding that the Orphans' Court of Montgomery County had jurisdiction over the

adoption of the child, President Judge Holland said (p. 665):

"Residence is ordinarily personal presence in a fixed and permanent abode. This is true except in the case of a minor where, as above indicated, when the minor is illegitimate, the mother's residence is the child's residence, and in the case of a legitimate child the father's residence is the child's residence. When, however, in the case of a minor, the determining factor of residence of the parent is removed by death, from then on the residence of the minor can be determined only by his or her actual personal physical presence in a definite abode. We doubt very much whether the intent of the minor can have any bearing as it does in the case of an adult person, for the obvious reason, especially in the case of a minor of immature years, that her presence and location is governed largely by some adult. Therefore, where a minor, such as this child in question, has dwelt in a permanent abode for several months, we believe it a proper conclusion that her residence is in the location where that abode is situated. In this case, the child has resided for several months in the home of the petitioner, Marie J. Peterson, in Audubon, Lower Providence Township, Montgomery County, and we therefore conclude and hold that the residence of the child is Montgomery County. Therefore, the court has jurisdiction also of the petition of Sarai H. Lockwood."

Being satisfied as to the jurisdiction of this court over the adoption in question, it is next necessary to consider whether the adoption proceedings were fatally defective for lack of any of the required statutory consents or notices.

Under the provisions of section 2 (d) of the act, cited supra, consent is necessary as follows:

"If the person proposed to be adopted has no father or mother living or whose consent is necessary hereunder, then of the legal guardian, if any there be, and of the person or persons having the legal custody of

such child, if any such person can be found, but if such child has no father or mother living or whose consent is necessary hereunder, and no legal guardian, and no person can be found who has the legal custody of such child, and the same be proven to the satisfaction of the court or judge hearing the petition, the said court or judge shall so find as a fact."

In the instant case, the child proposed to be adopted had no living mother or father or legal guardian. Adoptive petitioners, being the persons having legal custody of the child, expressly consented to the proposed adoption. Accordingly, all the essential statutory requirements regarding consent were met by adopting petitioners. The consent of any other relative of the child not specifically mentioned in the statute was entirely unnecessary. In Re McGinness' Adoption, 74 Pa. Superior Ct. 523 (1920). The consent of such relatives being unnecessary, they were not entitled to notice of the adoption proceedings. While it might have been preferable for adopting petitioners to have given actual notice to present petitioner of the filing of the petition and of the time of the adoption hearing, their failure to do what they were not legally required to do cannot invalidate the proceedings. If there had been any fraudulent concealment of material facts from the hearing judge, such evidence would have been relevant and pertinent upon a petition to revoke. See Molin Adoption, 34 Del. Co. 470 (1946). But in the instant case, adopting petitioners informed the hearing judge that present petitioner was opposed to the adoption, and also that she was proceeding in the Ohio court for the appointment of herself as legal guardian of the child. Accordingly, we cannot find that there was any fraud whatsoever practiced upon this court by adopting petitioners. With respect to their action in obtaining a postponement of the guardianship hearing in Ohio until after the completion of the adoption proceedings here, this court is not particularly concerned. Such

action may possibly be considered in connection with future proceedings in the Ohio court, or in connection with a possible custody contest between the purported legal guardian of the person of the child and the adoptive parents, but it does not in any manner affect the validity of the adoption proceedings, nor does it demonstrate in the slightest degree that adoptive petitioners are not proper persons to be the legally adoptive parents of the child.

The remaining point for consideration is the alleged "improvidence" of the decree of adoption. It is difficult to find in the record of either the original adoption proceedings or the revocation proceedings any support whatsoever for such allegation. The chief objection of petitioner appears to be her resentment that the child's name has been changed by the adoption from Findlay to Westlake. This objection, however, loses most of its force by virtue of the fact that the name Findlay has not been taken away from the child completely, but has been retained as part of her adoptive name. The change from Sarah Jane Findlay to Sarah Jane Findlay Westlake is certainly no more radical change than would, in the normal course of events, be effected by marriage. In addition thereto, Westlake is the family name of this child's mother, and not merely the name of a complete stranger to the blood. The court cannot in good conscience permit the mere change of name to upset an adoption which is otherwise desirable.

It seems obvious that the child will have far-superior advantages in the home of respondents than she would have in the home of petitioner, both from a standpoint of physical comforts, as well as being in a well balanced household. It has been suggested by petitioner that the child can enjoy the advantages of respondents' home if respondents merely have custody without legally adopting her. This argument, however, ignores the very substantial advantages to be realized by this

child from the adoption, including the possibility of inheriting from the adoptive parents while retaining her own estate intact. As in the original adoption proceedings, the important question in the revocation proceedings, the statutory requirements having been fulfilled, is the welfare and best interests of the child: Hazuka's Case, 345 Pa. 432 (1942); Weinbach's Appeal, 316 Pa. 333 (1934). It is an almost inescapable conclusion that the welfare and best interests of this child will be promoted by the dismissal of the instant petition.

### Conclusions of law

1. The court has jurisdiction over the adoption of this child, and all parties in interest are properly before the court.

2. At the time of the adoption proceedings, adoptive petitioners had legal custody of the child.

3. Consent to the adoption was obtained from, and due notice of the adoption proceedings was given to all persons required by the statute.

4. No fraud was practiced upon the court by adoptive petitioners in connection with the adoption proceedings.

5. The welfare of the child will be promoted by her adoption by petitioners, and would not be promoted by the vacation or setting aside of the adoption decree.

In accordance with the above findings of fact and conclusions of law, the court enters the following

### Decree

And now, to wit, June 25, 1947, it is hereby ordered, adjudged, and decreed that the petition of Mary E. Westlake to vacate and set aside the decree of adoption of Sarah Jane Findlay by Edward B. Westlake, Jr., and Zelda T. Westlake, his wife, be, and the same is hereby refused and dismissed.

The parties shall bear their respective costs.