# DiLullo's Adoption

*Samuel R. Liever*, for petitioners.
*James F. Marx*, for respondent.

MARX, P. J., August 22, 1947.—George Papoutsis and Bessie Papoutsis, husband and wife, citizens of this Commonwealth, resident at 244 Rose Street, Reading, Berks County, Pa., seek the adoption of Jane Marie DiLullo, the child of said Bessie Papoutsis, and her former husband, Nicholas DiLullo.

The child was born in Reading, on March 19, 1942. Bessie Papoutsis and Nicholas DiLullo were divorced on September 4, 1945, the mother retaining custody of the child. She was married on September 24, 1945, to George Papoutsis.

After separation from her former husband, Bessie Papoutsis agreed to accept and Nicholas DiLullo agreed to pay to her the sum of $5 a week for the support and maintenance of their child. The agreement, in writing, was filed in the nonsupport office and the father of the child paid accordingly, from about September 4, 1945, to October 18, 1945. He paid nothing

after the latter date. In the petition now before us he is charged with abandonment of the child. He resists the adoption, appeared in court with counsel, and participated in a hearing on the petition.

Petitioner, George Papoutsis, is 29 years of age, was born in, and has been a resident in the City of Reading for 29 years. He is in the employ of the Firestone Tire and Rubber Company in the City of Pottstown, Pa. He earns an average of $80 to $85 a week, and has been the sole support of the child since October 18, 1945.

The father of the child always knew where the child and her mother lived. Since October 18, 1945, he neither called to see the child, nor sought temporary custody of her. He gave her no clothing or gifts, and sought no opportunity to speak to her. He was never refused an opportunity to perform any parental duty or to enjoy a parental pleasure or privilege with her.

DiLullo resides at 104 South Third Street, Reading, about five city blocks from the home of petitioners. He lost his employment at the American Chain and Cable Co., Inc., and thereafter, without employment for one year, he tended bar at various drinking places, several nights a week, earning an average of $15 a week. He is now steadily employed as cook at the hotel at Third and Elm Streets, earning his food and $20 a week.

He never complained of inability to see the child, but now refuses to forego his rights to the child, and to consent to the adoption.

" 'The statutory notion of abandonment does not necessarily, we think, imply that the parent has deserted the child, or even ceased to feel any concern for its interests. It fairly may, and in our judgment does, import any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claim to the child. Such a purpose, clearly manifested, certainly forms a

more reasonable ground for permitting judicial discretion to decide whether another may assume these claims and duties than does the signature of the parent, which a mere impulse may induce. It does not follow that the purpose may not be repented of, and in proper cases all parental rights again acquired, including this statutory right of preventing adoption by withholding consent; but, when once the abandonment is shown to have existed, it becomes a judicial question whether it really has been terminated or can be, consistently with the welfare of the child. When, in pursuance perhaps of the abandonment, new ties have been formed and a new station in life has been taken by the child, it might be unjust that, solely because of the parents' caprice, legal sanction should be refused to the new conditions. Under such circumstances, a court might lawfully deem the abandonment irrevocable, so far as the claims of the parent were concerned' ": Weinbach's Appeal, 316 Pa. 333, 339, citing Winans v. Luppie, 47 N. J. Eq. 302, 304, 20 Atl. 969; Adoption of Ogurcak, 35 Berks 127, 129.

"Abandonment may occur in a number of ways. It may be effected by a formal legal instrument or merely by conduct evincing a settled purpose to forego all parental duties and relinquish all parental claims. It is a matter largely of intention to be ascertained from the circumstances, and whether or not a child has been abandoned is a question of fact": Hazuka's Case, 345 Pa. 432.

"Abandonment is not an ambulatory thing the legal effects of which a delinquent parent may dissipate at will by the expression of a desire for the return of the discarded child. We do not mean to say that the natural parental right to a child, which has been nullified by abandonment, may not later be retrieved. It may be. But, as the parent's consent to an adoption is no longer necessary, once abandonment has been proven

with required legal sufficiency, the welfare of the abandoned child is the primary and paramount concern of the court unaffected by the desire or caprice of the abandoning parent.

"When, then, does abandonment become complete? That is a question of fact to be determined from the evidence. It requires an intent to escape parental responsibility, and conduct in effectuation of such intent: See Hazuka's Case, supra. However, the inexorable circumstances of a child that has been abandoned may soon render the abandonment effectual. That is necessarily so. A child's natural needs for food, clothing and shelter demand that someone immediately assume the attendant responsibility which an abandoning parent has ignored; and, that responsibility endures constantly. It does not await the capricious decision of an uncertain parent, perhaps, years later. The longer the responsibility continues to be discharged capably by the foster parent, the stronger become the ties that form out of the new relationship until there comes a time—possibly, not long deferred, when the welfare of the child may justly require that the parental responsibility be allowed to remain where the abandoning parent has willingly permitted it to be": Davies Adoption Case, 353 Pa. 579, 587; see also Schwab Adoption Case, 355 Pa. 534.

At no time was the father in such dire, straitened circumstances that he could not have sought temporary relief from his duty of support by application to the court, or by request to the mother of the child. He preferred to continue in default, thereby building, stone by stone, the case of abandonment against himself. He refuses to forego his parental rights, but refuses to recognize or perform his corresponding parental duties. He renders lip-service to his responsibility, but avoids all semblance of performance. His actions are more effective than his words. We hold him guilty

of abandonment, without retrieve, and accordingly grant the prayer of the petition and direct submission of a decree in keeping with our findings herein.