## Coudriet Adoption

*Louis S. Kunkel*, for petitioner.
*Walter Sohn*, for Michael F. Coudriet.

RICHARDS, P. J., January 7, 1948.—The petition for adoption in this case avers that the mother of the child is dead and that the father has abandoned the child. We therefore directed that notice of the hearing be given to the father. This was done and the father appeared at the hearing. He refused to consent to the adoption and denied any abandonment. We are obliged, therefore, to consider the testimony as a whole to determine whether or not the father is guilty of abandonment.

Michael F. Coudriet married Reba Louise Arbegast in June of 1938. They lived for a time with Mr. Coudriet's mother at Williamsport, Pa. They were in

strained financial circumstances and finally came to Harrisburg and lived in the home of Mrs. C. A. Snyder, a sister of Mrs. Emerick, one of petitioners. The child, Sharon, was born in Harrisburg on December 22, 1938. Mrs. Coudriet, the mother, died on March 1, 1939. About the last week of April 1939 the father asked Mrs. Emerick if she would take the child and raise her as he could not support her. This was agreed to by Mrs. Emerick, and from that time to the present time the child has been reared and cared for in the Emerick home, at the expense of the Emericks.

The child is of a very nervous disposition, has serious health problems and needs almost constant medical attention. Her condition is such as to indicate a prognosis of continuing nervousness and ill health. Petitioners, who are of excellent standing in the community, well able to take care of the child financially, have grown to love her deeply. The child is adjusted to the home and has never known any other. She is very fond of petitioners and scarcely knows her father. She suffered a serious nervous reaction when she learned that her father wanted to take her away from the Emericks. She lost her sense of security and became panicky. The Emericks are related to the child, Mrs. Emerick being a grand-aunt by blood relationship. They paid the hospital bill incident to the birth of the child.

Mr. Coudriet also lived in the Emerick home from April 1939 until he went into the Army on March 13, 1942. During part of this time he had a very low income, although he later got a job on the railroad which paid fairly well. He paid the Emericks variable amounts for his room and board, but not for the support of the child. Neither did the father clothe the child or provide the toys and incidental things required. These were all furnished by the Emericks. He was in the Army from March 13, 1942, to December 7, 1945. During this period he occasionally sent a card or letter

to the child or the Emericks, but made no contribution
ing the Army he saw the child but twice, once about
for her support by allotment or otherwise. After enter-
Christmas time in 1943, and again in September 1947,
after the petition in the present case was presented.
The child did not recognize or know her father and
there was no apparent affection between them. From
the time Mr. Coudriet got out of the Army to the pres-
ent time he has neither supported the child or offered
to do so. He has made some small gifts.

Mr. Coudriet is of the Catholic faith. His first wife,
the mother of the child here involved, was a Protestant.
The child has been baptized as a Protestant and reared
in that faith. She is now nine years of age. Mr. Cou-
driet remarried while he was in the Army, his second
wife being a Protestant. He and his wife operated a
beauty parlor in Dothan, Ala., their joint income being
between $325 and $400 per month. Although he has
been out of the Army for over two years, he made no
attempt to visit the child before the petition for adop-
tion was presented. Neither did he offer a home to the
child, or, as we have said above, contribute anything
to her support. His explanation is that his father-in-
law was sick.

Notwithstanding the fact that Mr. Coudriet is a
Catholic, he at no time appealed to his own church or
its agencies for help in placing, rearing or caring for
the child.

## Discussion

The Supreme Court has furnished us with certain
guides to determine abandonment. In Hazuka's case,
345 Pa. 432 (1942), Mr. Justice Horace Stern, speak-
ing for the court, said, at page 435:

"Abandonment may occur in a number of ways. It
may be effected by a formal legal instrument or merely
by conduct evincing a settled purpose to forego all
parental duties and relinquish all parental claims. It
is a matter largely of intention to be ascertained from

the circumstances, and whether or not a child has been abandoned is a question of fact."

To the same effect, see Schwab Adoption Case, 355 Pa. 534, 538 (1947), the opinion of which was written by Mr. Justice Allen M. Stearne.

In Davies' Adoption Case, 353 Pa. 579, 588 (1946), Mr. Justice Jones, speaking for the court, made the following statement:

" 'It (i. e., abandonment) fairly may, and in our judgment does, import any conduct on the part of the parent which evinces a settled purpose to forego all parental duties and relinquish all parental claim to the child . . . when once the abandonment is shown to have existed, it becomes a judicial question whether it really has been terminated or can be, consistently with the welfare of the child. When, in pursuance perhaps of the abandonment, new ties have been formed and a new station in life has been taken by the child, it might be unjust that, solely because of the parents' caprice, legal sanction should be refused to the new conditions.' The emotional disturbance to a child that would threaten from its being removed summarily and permanently from familiar and agreeable surroundings and associations, incident to the only parental control and supervision it has ever known, could have a very harmful effect on the child's whole life. Fortunately, the law's regard for a child's welfare does not admit of any such injury or harm being done it."

In view of these pronouncements, after carefully considering the evidence, its inherent probability and the credibility of the witnesses, we are convinced beyond doubt that the father in this case abandoned this child. He certainly did "forego all his duties and responsibilities" with reference to this child for a period of almost nine years. We must remember, in this connection, that the father is not an immature person. He is 33 years of age. He at no time inti-

mated to petitioners, or to his child, any intent to resume his parental duties, until this adoption proceeding was instituted. We likewise cannot escape the conclusion that he "relinquished all parental claims." His "intention" must be "ascertained from the circumstances," and they are all corroborative of an intent to abandon his parental rights and duties. Furthermore, as was said by Mr. Justice Jones, in the Davies' case, supra, to tear this child from the only home she has ever known, a home where she has received intelligent and loving care and devotion, a home to which she is adjusted, and in which she finds security, and to place her in a strange environment among people she scarcely knows, and for whom she has no affection, would subject her to a nervous and emotional upheaval, not only detrimental to her feeling of security and contentment but actually dangerous to her mental and physical welfare.

We therefore conclude, that Michael Coudriet has abandoned his child for a period of upward of eight years and that his consent to the adoption prayed for is not required by law. We therefore enter the following

### Decree

And now, to wit, January 7, 1948, after hearing in the above-entitled case, we are satisfied that the statements made in the petition are true; that the welfare of Sharon Rosann Coudriet will be promoted by the adoption prayed for; and that all of the requirements of the Adoption Act, and its amendments and supplements, have been complied with.

It is therefore ordered and decreed that Sharon Rosann Coudriet shall hereafter be the adopted child of Simon G. Emerick and Anna Emerick, his wife, and shall be entitled to all of the rights of a child and heir of said adopting parents, and be subject to the duties of a child. The said child, Sharon Rosann Coudriet shall hereafter be known as Sharon Rosann Emerick.