## In re Kimberly Ann Brush

*Hampson & Hampson,* for petitioner.

WOLFE, P. J., October 19, 1972.—For disposition is the petition of Kathleen Chiodo requesting the parental rights of respondent, Joe Brush, natural father of Kimberly Ann Brush, be terminated in accordance with the Adoption Act of July 24, 1970, P. L. 620, art. I, sec. 101, et seq., 1 PS §101.

The material facts to resolve the issue are not, in the main, greatly in dispute.

The parties are the parents of Kimberly Ann Brush, born May 27, 1961. The parties are divorced and both have remarried with a support order entered against respondent by the Allegheny County court originally on November 13, 1964, to pay petitioner $10 per week, followed by a subsequent medical payment order en-

tered on April 17, 1967. This order is in gross delinquency, the last payment being made on October 2, 1970, with a current arrearage of $1,900. Respondent did pay a total of $2,260 to and inclusive of 1970.

Respondent has denied he has abandoned his child and states his reason for not making the support payments was his denial of visitation rights. In turn, petitioner's reason for not permitting visitation rights was due to respondent's arrearage. Consequently, respondent made no payments and petitioner refused him visitation rights. Their respective positions are borne out by two letters from petitioner's attorney to respondent advising him on June 19, 1970, and again on August 3, 1970, he was advising his client not to permit visitations until the support order was honored, and, in the same vein, respondent's attorney allegedly advised respondent was not to make any support payments until his visitations were restored. The latter position is supported by two copies of letters respondent allegedly wrote petitioner on May 23, 1970, and again on June 16, 1970, requesting rights to visit his child. On one occasion, in Pittsburgh in 1971, respondent visited his child for approximately two minutes outside his former in-law's home; however, petitioner forbade the child to communicate with him.

The controlling portion of the Adoption Act, supra, is section 311(1), which provides:

"The rights of a parent in regard to a child may be terminated after a petition filed pursuant to section 312, and a hearing held pursuant to section 313, on the ground that: (1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child, or has refused or failed to perform parental duties."

There can be no question from the testimony re-

spondent has failed to regularly correspond with his daughter, or physically attempt to visit her, or make any gifts to her, or support her for upwards of two years. He states this was not due to his lack of love or concern for his daughter but rather he was directed by petitioner's attorney to correspond with him through respondent's attorney.

The statute follows the case law in that abandonment imports any conduct on the part of the parent which evidences a settled purpose to forego all parental duties and relinquishes all parental claims to the child: Weinbach's Appeal, 316 Pa. 333 (1934). Such a purpose, however, must be "clearly manifested" and even though a proposed adoption would be beneficial to the child, and certainly what is beneficial for the child is of paramount importance in a custody case, this cannot be regarded as evidence of abandonment: Commonwealth ex rel. v. Daven, 298 Pa. 416 (1930).

Under the Adoption Act, the welfare of the child is weighed only after the necessary consents have already been given or forfeited: Schwab Adoption Case, 355 Pa. 534 (1947).

In the instant case, these proceedings were commenced in preparation to a proposed adoption. However, by reason of the foregoing cases, we cannot consider this issue in this proceeding.

In considering the question of abandonment and forfeiture of rights by a parent, the court, in the recent case of Jagodzinski Adoption Case, 444 Pa. 511, 281 A. 2d 868 (1971), following the holding in Smith Adoption Case, 412 Pa. 501, 194 A. 2d 919, quoted: " 'The parental obligation is a positive duty and requires affirmative performance which may not be delayed beyond the statutory period by the parent if the parental right is not to be forfeited.' " There, the court held that if a parent gives no adequate explana-

tion or justification of his failure to pursue affirmatively his parental duties, forfeiture may be decreed.

Again, in Davies Adoption Case, 353 Pa. 579 (1946), it was held that abandonment, "requires an intent to escape parental responsibility, and conduct in effectuation of such intent."

We cannot conclude from all of the evidence in this case that respondent displayed a settled intent to abandon his child or conduct himself in such a manner to escape his parental responsibility. At best, the evidence shows that the respondent, according to his testimony, relied upon the admonition from petitioner's attorney that he could not visit his child if he did not pay the support arrearage. In addition, the stepfather testified petitioner's attorney advised him because of respondent's default it would be best not to permit respondent to make visitations. Because of the arrearage, ill feelings arose between the parties and they became embittered to the point that communications by telephone were made impossible.

Petitioner acknowledged she did not inquire or press respondent about the support arrearage for the last two years. Indeed, she testified she did not miss it, that is the $10 per week although she felt a father should pay support for his child.

Although we do not conclude, there is a strong inference that there was a deliberate and calculated plan on petitioner's part to cut off all communications with respondent with the thought abandonment would be decreed and therefore the adoption consummated without respondent's consent.

Although respondent's conduct over the last two years was certainly lax there is no evidence to conclude he intended to escape his parental duties when considering the issue of abandonment. The evidence indicates there was justification for respondent's failure

to pay. He did make some effort to retain his own counsel after petitioner retained counsel and left the matter in his hands. Additionally, respondent made some tenuous effort to seek advice from a social worker of the County Court of Allegheny concerning his problems of visitations.

Counsel for petitioner cites Commonwealth v. Mexal, 201 Pa. Superior Ct. 457 (1963); Commonwealth ex rel. v. Mickey, 220 Pa. Superior Ct. 39 (1971), and De Welles v. Dwelle, 214 Pa. Superior Ct. 376 (1969), for the proposition a support order must be complied with regardless of the wife's wrongfully denying the father's visitations. With this law and position we have no disagreement; however, we cannot agree that is the issue in this case. It is true respondent failed to support his child for two years notwithstanding petitioner's wrongfully withholding visitation. However, this does not force a conclusion respondent displayed a settled intent to abandon his child either expressly or by implication. Certainly the nonpayment of a support order is evidence to consider but, in the court's opinion, is not controlling in itself. All the circumstances must be considered as in any other case to indicate the element of intent. Both parties' wrongful acts do not establish a "settled purpose of relinquishing parental claim to a child" by one. At best, it concludes both were laboring under a misconception of the law as to their respective rights and duties.

On the other hand we cannot overlook the arrearage accumulated in the past two years and prior thereto and in this regard we consider it germane to the current issue and will order respondent to bring the arrearage to date within two months from the date hereof or to show cause why he should not be held in contempt of the support order. In like manner, peti-

tioner will be compelled to make arrangements for reasonable visitation rights for respondent and in the absence of any agreement, upon motion, the court will establish such visitations after an evidentiary hearing.

For the foregoing reasons we make the following

## ORDER

And now, to wit, this October 19, 1972, the petition of Kathleen Chiodo requesting the court to terminate the parental rights of respondent, Joe E. Brush, is denied.

Respondent, Joe E. Brush, shall bring the arrearage on the support order entered against him to date within two months after service of this order upon him or his attorney by payment to the Probation Office of Warren County for the use of Kimberly Ann Brush, and in default thereof a rule shall issue upon him to show cause why he should not be held in contempt of the Court order of support. Additionally, respondent shall pay $10 per week each and every week for the support and maintenance of his daughter, Kimberly Ann Brush, and shall pay the past medical bills incurred under the support order of April 17, 1967, and in the event petitioner has paid said medical bills respondent shall reimburse petitioner for same.

Petitioner shall make arrangements with respondent for respondent's visits to see his daughter at reasonable times and places and in the event the parties cannot agree, upon motion, of either, the court, after evidentiary hearing shall establish visitation rights for respondent.