## Southard Adoption Case.

Argued January 13, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

Charles H. Weidner, with him John D. Glase and Stevens & Lee, for appellant.

Daniel G. Rothermel, for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, March 22, 1948:

The single question is whether, in an adoption proceeding, the testimony supports a finding of abandonment.

Adoption is authorized in Pennsylvania by the Act of April 4, 1925 P. L. 127, as amended by the Acts of April 26, 1929 P. L. 822; June 5, 1941 P. L. 93; July 2, 1941, P. L. 229 and the Act of June 30, 1947, P. L. 1180, 1 PS 1 et seq., and Purdon's Pennsylvania Legislative Service 1947. By section 2 (c) of the Act, consent of the parents of the person proposed to be adopted is required, but ". . . the consent of a parent . . . who has *aban-doned* the child, is unnecessary, provided such fact is proven to the satisfaction of the court or judge hearing the petition, in which case such court or judge shall so find as a fact" (emphasis supplied).

On January 22, 1947, Charles Strohmeyer, Jr. and Myrtle Anna Strohmeyer, his wife (appellees), petitioned the Orphans' Court of Berks County for the adoption of Robert Choate Southard, III, a six year old child. The boy's father is Robert Choate Southard, Jr. (appellant), the divorced husband of Mrs. Strohmeyer. By the seventh paragraph of the petition for adoption, it is averred that the natural father abandoned the child. The father of the child refuses to consent to the adoption. Appellant and his former wife, at the time of marriage on March 17, 1939, lived in Jacksonville, Florida. Appellant's occupation at that time was that of a commercial philatelist. The child was born on March 31, 1941. The couple later moved to Washington, D. C., where appellant worked as a railroad clerk for over three years prior to the divorce. On March 4, 1944, a separation occurred in Washington. The wife and child returned to her parents' home in Jacksonville, Florida, and the husband remained in Washington. On November 25, 1944, the wife obtained a divorce in Florida, under which decree she was awarded the permanent care, custody and control of the child, but the father was given: ". . . the right to visit said child and have said child visit him at reasonable times and under reasonable circumstances, such visits being at times convenient to the plaintiff and they shall not interrupt or interfere with her control of the physical, educational or moral welfare of said child." By the decree it was also ordered that the husband should pay the wife $30 a month for the support of the child.

Checks were sent by appellant from Washington, D. C., for the support of his wife and son until the decree of divorce was entered. On or about December 15, 1944, appellant returned to the home of his parents in Jacksonville, Florida. From December 1944 to May 5, 1945, appellant was out of employment. He resided with his parents while waiting entry into the United States Maritime Service. During this period of unemployment the

child stayed mostly with appellant at his parents' residence. Appellant's mother went after the child on Monday of each week. The child was kept by appellant until each Friday evening when he was returned to his mother so that he could spend the week-ends with her. During this period the parents of appellant fed, clothed and cared for the child, and appellant performed the normal duties of a parent. Appellant entered the Maritime Service on May 5, 1945 and remained in that service until August 20, 1945. At the conclusion of his service, appellant returned to Jacksonville for a few days, and in September 1945 went back to his railroad clerkship in Washington, D. C., where he remained until March 1946. Appellant then returned to Jacksonville and entered the employ of an automobile company at $200 a month and was employed by said company when the proceedings in adoption were instituted.

The appellant's former wife and Charles Strohmeyer, Jr. (appellees), were married in Jacksonville, Florida, on March 24, 1945—almost four months after the divorce. Charles Strohmeyer, Jr., was then in the United States Navy and stationed in Florida. He was discharged from the Navy on April 3, 1946. *On the same day,* the mother, accompanied by the child, and without notice to appellant, removed from Jacksonville and was joined by her husband on the following day. They took the child to Reading, Pennsylvania, where Mr. Strohmeyer obtained employment. They are presently residing in a township near that city.

The idea of adoption came to Mr. Strohmeyer, as both appellees testified, shortly after the marriage. As early as two or three months thereafter, Mr. Strohmeyer suggested adoption to the appellant's mother. An offer was made orally and in writing by petitioners' attorney that all delinquent and future support payments would be cancelled if the appellant consented to the adoption. Appellant refused the offer.

Disagreements over the custody of the child commenced after appellant left the Maritime Service in August 1945. From November 18, 1945 to June 22, 1946, appellant sent his wife seven checks aggregating in amount $240. Only $90 was realized from the checks. Payment had been stopped on some of them and others had been restricted as to the time within which they could be paid. The court estimated that under the divorce decree appellant should have paid $870 to date of the adoption hearing, but actually had paid only the $90 above mentioned. The court also found that whether appellant was liable to the full extent "may be a question," but that such question should be submitted to the court for relief or adjustment.

The first of the seven checks described by the hearing judge was dated November 18, 1945 and the last June 22, 1946. It was established that appellant's attorney advised appellent to make no more support payments until he was given the right of visitation. Appellant explained his stopping payment of certain checks and restricting the date of payment of others. Some of the checks had been held by his former wife for five or six months before being presented for payment. The reason assigned by appellees for holding the checks was their fear that cashing them might jeopardize the desired adoption.

The learned hearing judge found that the failure of appellant to support the child as directed by the divorce decree amounted to abandonment. He ruled that appellant's duty was first to pay the support order in full, and then, and then only, could appellant complain *to the court* concerning his former wife's alleged evasion of the Florida court's decree as to his right to visitation. The petition for adoption was granted, from which this appeal is taken.

In an adoption proceeding, a finding of abandonment by a hearing judge is reviewable by this Court: *Weinbach's Appeal*, 316 Pa. 333, 336, 175 A. 500; *Hazuka's*

Case, 345 Pa. 432, 435, 29 A. 2d 88; Davies Adoption Case, 353 Pa. 579, 580, 46 A. 2d 252; Schwab Adoption Case, 355 Pa. 534, 538, 50 A. 2d 504. Such a finding, like any other conclusion from established facts, is a deduction or inference and is the result of reasoning: Cf. William Sellers & Co., Inc., v. Clarke-Harrison, Inc., et al., 354 Pa. 109, 118, 46 A. 2d 497; Jac Estate, 355 Pa. 137, 143, 49 A. 2d 360; Brooks et al. v. Conston et al., 356 Pa. 69, 70, 51 A. 2d 684, and the cases therein cited. Abandonment, within the meaning of the adoption statutes, imports any conduct on the part of the parent which evidences a settled purpose to forego all parental duties and relinquish all parental claims to the child: Weinbach's Appeal; Hazuka's Case; Davies Adoption Case; Schwab Adoption Case, all supra.

Failure to support, standing alone, is not conclusive of a parent's intent to abandon a child. This is conceded by the hearing judge. The court found, however, that appellant's assigned reason for his refusal or neglect to pay was not made in good faith, but constituted dilatory tactics. While appellant's actions may have been dilatory and in violation of the Florida divorce decree, they were not shown conclusively to have been made in bad faith. The evidence does not show conduct on the part of the appellant evidencing a settled purpose to forego all parental duties or to relinquish all parental claims to the child. On the contrary, there is ample testimony which negatives appellant's intent to abandon the child by refusing or neglecting to support him. From the date of separation, March 4, 1944, to the entry of the divorce decree, November 25, 1944, appellant expended most of his income in shipping household furniture and effects from Washington, D. C., to his former wife in Jacksonville and in sending her support payments. After the divorce, appellant was unemployed from December 1944 to May 1945. From May 1945 to August 20, 1945, appellant received $50 monthly from the Maritime Service as subsistence pay. Appellant

testified that no payments were made to his former wife while he was in the service because his former wife knew that he had little or no income and she had agreed to support the child until such time as appellant was able to support him. It was further testified that although appellant possessed a stamp collection valued at from $1,200 to $1,500, he did not dispose of it to make the support payments because to do so would have resulted in a loss. What value appellant's automobile possessed was not shown. The situation concerning the stoppage of payment and restriction of other checks to payment within sixty days, after appellant was discharged from the Maritime Service, has been related. We note that it was the appellees who took the child from Jacksonville to Reading, Pennsylvania, without the knowledge of, or notice to, appellant and without advising him of the child's whereabouts. And, it was the former wife who refused to allow the child to visit appellant in Florida. Appellant's conduct reveals no settled intention to abandon the child.

The basic dispute is one of visitation. The mother may or may not have been justified in her refusal to permit the father to visit the child and to have the child visit him. We do not condone appellant's neglect or refusal to comply with the support order. By appropriate legal action, compliance with the divorce decree may yet be enforced against either or both parents. There is no substantial impelling evidence of *abandonment* within the meaning of the adoption statutes. We can appreciate the unwillingness of a father to relinquish all parental rights, especially in favor of his successor. Such parental rights should not be forfeited except in a clear case.

We said in *Schwab Adoption Case*, 355 Pa. 534, 536, 50 A. 2d 504: "In Pennsylvania a valid adoption severs the child from its natural family tree and engrafts it upon that of its new parentage. Thereafter the child attains the status, in law, of a natural child of the

adopting parents: Cave's Estate, 326 Pa. 358, 192 A. 460." Also, at p. 541: "The welfare of the child, as an element in adoption proceedings, has no relation to the question of the parent's abandonment. . . ."

As appellant did not abandon his child, within the meaning of the adoption statute, his refusal to consent to the adoption prevents the granting of the petition. The decree is reversed at the cost of appellees.