## Chester County Children's Services Appeal.

Argued April 19, 1974. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Susan P. Windle,* with her *James E. McErlane,* and *Lamb, Windle & McErlane,* for appellant.

No oral argument was made nor brief submitted for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, October 16, 1974:

This appeal stems from the lower court's denial of the Chester County Children's Services' (appellant's) petition for involuntary termination of parental rights of Jacqueline Cassen, the natural mother of Lumiere Castel Cassen. The principal question presented herein involves an interpretation of Section 311(1) of the Adoption Act of 1970:

"§311. Grounds for involuntary termination

"The rights of a parent in regard to a child may be terminated after a petition filed pursuant to section 312, and a hearing held pursuant to section 313, on the ground that:

"(1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child, or has refused *or* failed to perform parental duties. . . ."[1] The court below held that refusal or failure

---

[1] Act of July 21, 1970, P. L. 620, §311, 1 P.S. §311 (Supp. 1973) (Emphasis added).

to perform parental duties alone, without evidence of a settled purpose to relinquish parental claim, was insufficient to support an involuntary termination of rights. In so doing, however, we believe the court erred. The facts underlying this action are as follows:

Lumiere Castel Cassen, the subject of these proceedings, was born in 1968 from the union of Mrs. Cassen, the appellee, and one Rudolf Stern, although the birth certificate recited Anthony Cassen as the father.[2] The child lived with her mother until October 30, 1971, when the appellee-mother contacted her ex-husband and desperately urged him to take custody of Lumiere because she was unable to properly care and provide for the child. Mr. Cassen accepted the child, but the development of certain emotional problems in his household soon caused him to turn the child over to the appellant agency. Meanwhile, Mrs. Cassen had departed to England in order to pursue a course of study in scientology.

Between December 1971 and September 1972, there was correspondence between the Children's Services and Mrs. Cassen. In addition, there were two letters during that period from Mrs. Cassen which were directed to the child. However, between September 13, 1972, and March 19, 1973, the date the instant petition was filed, appellant received no communications from Mrs. Cassen whatsoever.[3]

The source of the lower court's error was its analysis of the case in terms of "abandonment." While abandonment was clearly the proper standard under the former adoption act[4] and while some recent deci-

---

[2] Although the Cassens were not divorced until after the child's birth, they had been separated since December of 1965.

[3] Mrs. Cassen testifed that she sent letters to appellant in December, January or February of 1973. However, the lower court rejected this assertion in its opinion and we can see no basis for disturbing this finding.

[4] Act of April 4, 1925, P. L. 127, §2, *as amended, repealed,* Act of July 24, 1970, P. L. 620, §601, 1 P.S. §601.

sions of this Court have continued to mention abandonment when discussing the Act of 1970,[5] it is clear that a termination of rights under Section 311(1) does not necessarily require an "abandonment" in the earlier meaning of that term.[6] Section 311(1) contains the same two elements which were previously required for a finding of "abandonment"—a settled purpose of relinquishing parental claim and the refusal or failure to perform parental duties. However, in the present statute these former "elements" stand as separate, independent bases for the termination of parental rights and this Court has previously construed them as such. See *Wolfe Adoption Case,* 454 Pa. 550, 312 A.2d 793 (1973); *Vader's Adoption Case,* 444 Pa. 428, 430n., 282 A.2d 359, 360n. (1971).

In the instant case, Mrs. Cassen's performance or lack thereof could reflect precisely the kind of situation to which the latter part of Section 311(1) speaks. While we noted in *Wolfe Adoption Case, supra,* that a parent need not always personally care for a child if the parent makes "reasonable arrangements" for the "temporary" care of the child, the present situation would not constitute the making of such reasonable temporary arrangements. Mrs. Cassen could hardly be credited with the arrangements which were in fact made for Lumiere. Moreover, there is serious question whether the placing of a child with a public welfare agency should be considered as the type of arrangement which would preserve a parent's claim to the child. It is necessary for us to remand this case to the court

---

[5] *See, e.g., Sheaffer Appeal,* 452 Pa. 165, 305 A.2d 36 (1973).

[6] Abandonment, as defined in the earlier statute, required "conduct on the part of a parent which evidences a settled purpose of relinquishing parental claim to the child *and* of refusing or failing to perform parental duties," Act of April 4, 1925, P. L. 127, §1(a), *as amended, repealed,* Act of July 24, 1970, P. L. 620, §601, 1 P.S. §601 (Supp. 1973) (Emphasis added).

below for consideration of several questions which were not specifically reached in its determination, namely: (1) whether the appellee failed or refused to perform parental duties; and (2) if so, whether her parental rights in the child should be terminated.

Decree vacated and remanded for further proceedings consistent with this opinion. Each party to pay own costs.