333 A.2d 846

In re ADOPTION OF Debora Ann FARABELLI.

Appeal of Steven and Lillian SALVATICO.

Supreme Court of Pennsylvania.

Argued Jan. 11, 1974.

Decided March 18, 1975.

424

Francis J. Sullivan, Jackson, Bortner & Ballow, Fairless Hills, for appellants.

William G. Klenk, II, Mark D. Seltzer, Sidkoff, Pincus, Greenberg & Golden, Philadelphia, for appellee, Tom Farabelli.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

OPINION

NIX, Justice.

The Orphans' Court in Bucks County, after dismissing exceptions, entered a final decree affirming a decree nisi which provided that the Petition for Adoption of a minor child, Debora Ann should be denied and that custody was to be granted to the natural father after a stated transitional period. The Hearing Court granted a supersedeas pending an appeal. The maternal grandparents have contested this decree and are the appellants in the present appeal.

The minor, Debora Ann, was born on May 30, 1965, being the only child of the union between Carolyn Frances (nee Salvatico) and Thomas Ralph Farabelli. Mrs. Farabelli died on June 4, 1965, within several days after the birth of her child, Debora. Upon Debora's release from the hospital, both she and her natural father, the instant appellee, took up residence in the home of the appellants, Lillian Elizabeth and John Steven Salvatico, Sr., the maternal grandparents of Debora. After two years, allegedly because of strained relationships between the appellee and the appellants, the appellee left the home of his in-laws and permitted them to retain custody of his young daughter.

On December 11, 1972, the appellants filed a Petition for Adoption under the new Adoption Act of 1970, July 24, P.L. 620, No. 208, art. I, § 101 et seq.; 1 P.S. § 101 et seq. (Supp.1974–75). Subsequently the appellee filed a Petition for Writ of Habeas Corpus requesting the custody of his daughter. After a hearing the Orphans' Court denied the petition of the appellants for adoption and granted the father's request for custody.

The appellants predicated their request for adoption on the theory that the parental rights of the father should have been involuntarily terminated under §

311(1) of the Adoption Act, supra.[1]  In response to this contention, the Hearing Court concluded that:

"The adopting petitioners have not borne the burden of proving the grounds they allege for the involuntary termination of the natural relationship between the child and her father, Thomas Ralph Farabelli.  The Hearing Judge hereby specifically finds that said Thomas Ralph Farabelli has *not,* for a period of at least six months, evidenced a settled purpose of relinquishing parental claim to his child nor has he for any such period of six months in fact failed to perform parental duties toward the child."

█ █  The scope of our review on this issue is limited to consideration of the testimony and the determination as to whether the Court's findings are supported by competent evidence.  *Sheaffer Appeal,* 452 Pa. 165, 305 A.2d 36 (1973); *Vaders Adoption Case,* 444 Pa. 428, 282 A.2d 359 (1971); *Hookey Adoption Case,* 419 Pa. 583, 215 A. 2d 860 (1966); *Harvey Adoption Case,* 375 Pa. 1, 99 A. 2d 276 (1953).  Additionally, the Hearing Court was correct in determining that the burden was on the appellants to establish evidence which would justify a basis for the involuntary termination of parental rights. *Adoption of McCray,* 460 Pa. 210, fn 4, 331 A.2d 652, fn 4 (Filed January 1975); *In Re Adoption of R. I.,* 455 Pa. 29, 32, 312 A.2d 601, 603 (1973); *Jacono Adoption Case,* 426 Pa. 98, 100, 231 A.2d 295, 297 (1967).

Section 311(1) provides:

"The rights of a parent in regard to a child may be terminated  .   .  , on the ground that:

(1) The parent by conduct continuing for a period of at least six months either has evidenced a settled pur-

1.  Even though the parental rights had not been previously terminated prior to the filing of a Petition for Adoption, the Court, upon proper evidence, may find that grounds exist for the involuntary termination of those rights and that the consent of the parent in question is not required.  1970, July 24, P.L. 620, No. 208, art. IV, § 414, 1 P.S. § 414 (Supp.1974–75).

pose of relinquishing parental claim to a child, or has refused or failed to perform parental duties;"

Under this provision, appellants are charged with the responsibility of establishing by a preponderance of the evidence that for a period of six months the appellee *either* evidenced a settled purpose of relinquishment of his parental claim *or* that he has refused or failed to perform his parental duties. A careful review of the record forces the conclusion that the evidence presented by the appellants fails to meet this burden and that the Hearing Court was correct in its assessment that no legal justification has been supplied that would justify the involuntary termination of the natural father's parental rights.

The testimony presented established that the child Debora upon leaving the hospital was taken to the home of appellants who then resided in Philadelphia. For a period of two years, after Debora's birth, appellee also resided in the home. During this period, appellee contributed $20.00 every five or six weeks. These payments were made voluntarily and there was no demand by appellants for more substantial or regular payments, nor was there any expression of dissatisfaction with the contributions that were made.

Sometime after June 1967 the appellee left the home and allowed his daughter to remain with her grandparents. The appellee alleges that, as a result of a deterioration of the relationship between his in-laws and himself, it was impossible for him to continue to reside there. Mrs. Salvatico stated that a nine-month period elapsed between the time the father left the home and his next communication with his daughter, Debora. This testimony was contradicted by the appellee who stated that only a period of a few weeks transpired before he resumed contact with his child. After the communications were re-established it is conceded that appellee would visit his daughter at three or four week intervals and would leave at the time of his visit the sum of $45.00

for the care of his daughter. These payments were also unsolicited and no complaint was made as to the inadequacy of the amount.

The appellants contended that from January 1972 until Christmas 1972 there was no communication between father and daughter. Appellee contradicted this testimony and stated that he did see his daughter in May 1972 and that he spoke to her in telephone conversations on two occasions between January 1972 and May 1972. He explained his failure to maintain more frequent contact with his daughter during this period to have been as a result of advice he had received from a priest. The appellee and appellants met with the priest to discuss the differences which had arisen between them which caused the daughter to experience an emotional problem. During this discussion it was suggested by the priest that he should not see his daughter for a few months to alleviate the tension that was developing.

The appellee also testified that during the period between January 1972 and May 1972 he engaged the service of counsel for the purpose of seeking custody of his child.[2] The record also fully establishes that during the period from January 1972 until December 1972, appellee married his fiancee, obtained a house and proceeded to furnish it and that one of his primary motives for taking these steps at that time was to provide a suitable home for his child. It was also established that appellee initially desired that an action be instituted for full custody in January 1972, but was persuaded by counsel to defer the institution of this suit until after he had obtained a home and family. It was further conceded that counsel, on behalf of appellee, between January 1972 and May 1972, had unsuccessfully attempted to seek an amicable agreement with counsel for the appellants for rights of visitation.

2. Appellee's attorney testified at the hearing and fully corroborated his client's testimony.

During the period from January 1972 to the filing of the Petition for Adoption, appellee sent $405.00 to appellants for the care and maintenance of his daughter.

The Hearing Court accurately and succinctly characterized the evidence when he observed:

"While for most of the child's life she has lived with her grandparents, the within adopting petitioners, and they have performed most of the ministerial functions of her everyday care in recent years, this circumstance in itself does not charge the father with either relinquishment or failure to perform parental duties. From the credible evidence, his own conduct and attitude at all times have been inconsistent with any idea that he intended to give up his child, and, by reason of his own widowed situation and consequent inability personally to care for the child until his remarriage, he has adequately discharged his parental duties toward her by permitting her to remain with her grandparents who, to his certain knowledge, would (and have) provided excellently for her upbringing. He also has contributed, albeit on an irregular basis, toward a significant part of the child's financial needs over all of the intervening years, and this was done without request or demand of the grandparents."

Appellants relied primarily on the period between January 1972 and the institution of the Petition for Adoption in December 1972 as the statutory period during which appellee failed to perform his parental duties as required under § 311(1). It is abundantly clear that the record is barren of any evidence to establish a settled purpose of relinquishment of parental rights. We have stated, even inaction or lack of interest in a child for a period in excess of six months will not conclusively establish the required settled purpose of relinquishment. This section has been interpreted as requiring a deliberate decision on the part of the parent to terminate the parental relationship and that parent must persist in

that determination throughout the six-month period. See *Wolfe Adoption Case,* 454 Pa. 550, 312 A.2d 793 (1973); *Sheaffer Appeal, supra.* To the contrary, the record herein amply suggests that throughout this period appellee was most concerned about the welfare of his child and, in fact, was affirmatively taking steps for the purpose of gaining custody.

The record is equally inadequate to support the theory that the appellee failed or refused to provide parental care during the statutory period. We have stated that this portion of § 311(1) requires that a parent exert himself to take and maintain a place of importance in the child's life. As a corollary, we required that a parent affirmatively demonstrate his love, protection and support of his child and to make every reasonable effort to maintain communication and association with that child. See *Adoption of McCray, supra; Appeal of Diane B.,* 456 Pa. 429, 321 A.2d 618 (1974); *Jacono Adoption Case, supra.* These principles, however, are necessarily subject to the qualifications that the measures taken by the parent to demonstrate his interest and affection must be viewed in light of the existing circumstances. Here, it was amply clear the relationship between the appellee and his in-laws had deteriorated to such a state that further personal contact with them would only exacerbate an already potentially inflammatory situation. Recognizing the wisdom of the priest, he refrained from acceding to the normal impulse to see his child and sought legal assistance in achieving a way to re-establish the communication. Additionally, he made major alterations in his life style motivated primarily by his obvious intense desire to regain the custody of his daughter. Under the existing circumstances, the record establishes his love and affection and his actions fully comported with the requirement that he affirmatively demonstrate that affection.

■ We therefore conclude that the court below was correct in its determination that the Petition for Adoption should have been denied. We next must consider the court's order with regard to the custody of Debora. In reaching its determination that custody was to be awarded to the natural father, the Hearing Court placed great reliance on *Commonwealth ex rel. Johnson v. Pinder*, 217 Pa.Super. 180, 269 A.2d 511 (1970). In that decision, a dispute over the custody of a minor arose between the natural father and the maternal grandmother. The Superior Court reversed the order of the court below awarding custody to the maternal grandmother. That Court observed.

> "The paramount consideration in child custody disputes to which all other factors are subordinate, is the child's welfare. Presumptively, the child's welfare is best served when the child is in the custody of its parent or parents, and prima facie a parent is entitled to the custody of his or her child. In a contest between a natural father and a non-parent, the father's right to the custody of his child is held to be so moving and urgent that it is forfeitable only by misconduct or other factors which substantially affect the child's welfare. *Commonwealth ex rel. Savath v. Mendelson*, 187 Pa.Super. 73, 143 A.2d 665 (1958); *Commonwealth ex rel. Insalaco v. Delconte*, 201 Pa. Super. 354, 192 A.2d 750 (1963), aff'd, 413 Pa. 221, 196 A.2d 353 (1964)." Id., 217 Pa.Super. at 182, 269 A.2d at 512.

■ We believe the rationale of the *Pinder* case possesses much wisdom. Unless there is impressive evidence either of the inadequacy of the natural parent to properly care for, provide for, maintain and guide the child, or other compelling facts dictating to the contrary, the God-created relationship of parent and child should not be disturbed.

We recognize our responsibility in matters dealing with the custody of children to exercise an independent judgment based on the evidence and to consider the testimony and make such an order on the merits of the case as right and justice dictate. *Commonwealth ex rel. Cooper v. Cooper*, 167 Pa.Super. 492, 75 A.2d 609 (1950); *Brown v. Brown*, 206 Pa.Super. 439, 213 A.2d 395 (1965). This power of review is not intended to mean that an Appellate Court is free to nullify the fact-finding function of the Hearing Judge. He alone has had the opportunity to observe the witnesses and appraise their credibility, and deference, for this reason, should be given to his determination as to the weight of the evidence presented. *Commonwealth ex rel. Harry v. Eastridge*, 374 Pa. 172, 97 A.2d 350 (1953).

We also recognize that the polestar in any decision pertaining to the custody of a minor must necessarily be in the best interest of that minor. *Cochran Appeal*, 394 Pa. 162, 145 A.2d 857 (1958); *Commonwealth ex rel. Graham v. Graham*, 367 Pa. 553, 80 A.2d 829 (1951); *Commonwealth ex rel. Harry v. Eastridge, supra.* The Hearing Court found, and the record amply supports, that the child would receive an abundance of love, care, training, affection and guidance in either household. Appellants have laid great stress on the traumatic effect they allege would be associated with the child's removal from the surroundings with which she has been familiar from birth (Debora was age eight at the time of the filing of the petition) and transplanted to what they suggest would be a foreign and unaccustomed environment. We are not unmindful of the adjustment that is required for a transition from one household to another. *Commonwealth ex rel. Children's Aid Society v. Gard et ux*, 362 Pa. 85, 66 A.2d 300 (1949); *Davies Adoption Case*, 353 Pa. 579, 46 A.2d 252 (1946). We are equally aware that the longer the former existing relationship, the more difficult the adjustment to the new family. These

considerations, however, cannot cloud the right of a child to experience the love and affection of a natural parent where that parent is not only able, but more than willing, to provide that relationship. Cf. *Commonwealth ex rel. Welsh v. Welsh*, 96 Pa.Super. 426 (1929).

Further it is significant in this case that the separation between the father and child was not in any way occasioned by the dereliction or lack of interest on the part of the father. To the contrary, the evidence strongly suggests that the father was unable to continue to maintain his relationship with his child primarily because of the attitude of the grandparents. Here, the father has done all that could be expected, with the resources available to him, to provide a fit and decent home for his child. No fact could attest with greater force to the sincerity of his affection or provide a greater assurance to a Court that the well-being of the child in the new home will be adequately satisfied.

In our opinion, the best interests of the child are always served, *where circumstances permit,* by participation in a natural parent-child relationship. *Cochran Appeal, supra.* Further, we recognize that, regardless of the affection that grandparents may have for their grandchild, the age differential makes a less desirable parent-child relationship than that which normally exists between a natural parent and his offspring.

To meet possible problems that might be created by the transition [3] the Hearing Judge wisely provided for a graduated transferral of custody. If the parties in good faith adhere to such a schedule, we are confident that the result will be to establish two strong relationships for

3. While we, in this opinion, have accepted the possibility that moving from the grandparents' home to the home of the father might require an adjustment on the part of the minor, the lower court was correct in its observation that no evidence was, in fact, introduced to establish that the change would present any difficulty.

this child, and not, as suggested, deprive her of an existing relationship.

The decree of the Hearing Court is affirmed, and the matter is remanded to the court below for the purpose of updating the schedule for the transfer of custody from the maternal grandparents to the natural father.

Each party to bear own costs.

EAGEN and POMEROY, JJ., concur in the result.

ROBERTS, J., filed a concurring opinion in which JONES, C. J., joins.

ROBERTS, Justice (concurring).

I concur in the result. In my view, the orphans' court correctly concluded that Debora's grandparents failed to present sufficient evidence to establish their claim that the father "for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to [the child] or has refused or failed to perform parental duties." Act of July 24, 1970, P.L. 620, No. 208, art. III, § 311(1), 1 P.S. § 311(1) (Supp.1974). Compare *Wolfe Adoption Case*, 454 Pa. 550, 312 A.2d 793 (1973), with *Adoption of McCray*, 460 Pa. 210, 331 A.2d 652 (1975); *In re Cassen*, 457 Pa. 525, 326 A.2d 377 (1974), and *Appeal of Diane B.*, 456 Pa. 429, 321 A.2d 618 (1974). Furthermore, the record supports the orphans' court's decision to award custody of Debora to her father. See *Commonwealth ex rel. Johnson v. Pinder*, 217 Pa.Super. 180, 269 A.2d 511 (1970).

JONES, C. J., joins in this opinion.