451 A.2d 725

**In re Dianne Lynn SPENCER.**

**Appeal of Mattie L. WITHERSPOON.**

Superior Court of Pennsylvania.

Argued. Feb. 3, 1982.

Filed Oct. 8, 1982.

James D. Wolman, Lancaster, for appellant.

Carol Gundel Falk, Lancaster, for appellee.

Robert David Bacher, Lancaster, for participating party.

Before WICKERSHAM, ROWLEY and McEWEN, JJ.

ROWLEY, Judge:

I.

Dianne Lynn Spencer was born September 12, 1977, the out-of-wedlock child of Estella Spencer and Richard Walton. When Dianne was ten months old, her mother married Samuel Witherspoon, the son of appellant Mattie A. Witherspoon. In July of 1979, Dianne, Estella and Samuel moved in with appellant. When Estella and Samuel later moved out, Dianne was left in appellant's care. On July 14, 1980, appellant filed a Petition for Adoption to adopt Dianne, pursuant to the Adoption Act of 1970, Act of July 24, 1970, P.L. 620, No. 208, 1 P.S. § 101 et seq. The Petition contained a consent to the adoption by Dianne's natural mother and sought involuntary termination of the natural father's parental rights. That same day, the court ordered an investigation by the Lancaster County Children and Youth Social Service Agency (the Agency). On December 12, 1980, the natural father's parental rights were terminated. Also on that date Carol Gundel Falk, Esquire, the appellee in this case, was appointed as Dianne's guardian ad litem.

An evidentiary hearing on the proposed adoption was held on January 16, 1981. While conceding that appellant loved and had adequately cared for Dianne, the Agency recommended against the adoption because "a much more suitable one could be provided by this or several other placement agencies in the area".

In an Opinion dated July 20, 1981, the lower court denied appellant's Petition for Adoption, citing the following reasons for its decision. The court concluded that the evidence presented concerning the current activities and lifestyle of

appellant's four youngest sons [1], ages twenty, eighteen, seventeen and sixteen years, indicated a lack of "nurture and fulfillment" in the manner in which they had been raised. The court was concerned with the presence of appellant's "paramour" of twenty years, a Mr. Opple, who is the father of her four youngest sons and who is presently renting a room from appellant. The court also concluded that there was an "aura of insecurity" in appellant's home. This conclusion was apparently based on three facts: 1) the bedrooms of Mr. Opple and the teenage sons were kept locked, 2) meals usually consisted of only appellant and Dianne at the table and 3) appellant's finances are entirely dependent upon governmental sources (social security and food stamps) and Mr. Opple's rent payment. In addition to denying the Adoption Petition, the lower court awarded custody of Dianne to the Agency.[2] It is that portion of the order dealing with custody which is at issue in this appeal.

Appellant raised two issues on appeal: 1) Whether, after an adoption petition has been denied, a court must follow the requirements of the Juvenile Act, Act of July 9, 1976, P.L. 586, No. 142, 42 Pa.C.S.A. § 6301 et seq., before custody may be granted to a public child care agency?; and 2) Whether the record is adequate to support the court's award of custody to the Agency?

## II.

Section 502 of the Adoption Act of 1970 provides that when an adoption petition is denied, the Orphan's Court is to enter "an appropriate order" in regard to the custody of the child. The Adoption Act provides no definition of what constitutes an "appropriate order".

Appellant contends that in a situation involving the proposed adoptive parent versus a public child care agency, there must be a petition for dependency filed and the full

1. Appellant's oldest son, twenty-eight years, was raised by her former husband.

2. However, pending appeal Dianne has continued to reside in appellant's home.

procedural safeguards set out in the Juvenile Act must be followed before custody can be awarded to a child-care agency. Or, in the alternative, there must at least be evidence that the child is "dependent", as defined in the Juvenile Act before granting custody to such an agency. We disagree.

The Juvenile Act focuses on the parent-child relationship and stresses the unity of the family. See 42 Pa.C.S.A. § 6301. First, we are not dealing with a parent-child relationship in this case. Appellant is not a parent, nor is she related by blood to Dianne. Appellant cites *Stapleton v. Dauph. Co. Child Care Service,* 228 Pa.Superior Ct. 371, 324 A.2d 562 (1974) to stand for the proposition that the Juvenile Act's safeguards are not limited to cases in which natural parents are involved. Custody of the child in *Stapleton* originally had been given to the child care agency when the child was declared to be a dependent and removed from his parents under the Juvenile Act. The agency then placed the child with foster parents. When the agency attempted to return the child to its natural parents, the foster parents filed a petition for rehearing in Juvenile Court, under the Juvenile Act. This Court held that the Juvenile Court had jurisdiction to hear the Petition. However, it was further held that while the standards of the Juvenile Act applied to the contest between the state and the natural parents, they no longer applied when the contest was between the state and foster parents. Rather, the issue was to be decided based on the "best interest of the child". 228 Pa.Superior Ct. at 387, 324 A.2d at 571.

The present case arose under the Adoption Act, which has its own purposes and powers, rather than the Juvenile Act. The introduction to the Adoption Act of 1970 indicates that it was meant to provide for the adoption of minors and adults and for the termination of certain parent-child relationships. It is not concerned with preserving family unity and no finding of dependency is necessary to terminate parental rights under the Act. Therefore, we will not imply the condition of a finding of dependency before the court

can award custody to a child-care agency under § 502 of the Act.

## III.

Although we have concluded that the Juvenile Act is not relevant to cases arising under the Adoption Act, we must agree with appellant that the record in this case is not sufficient to support the court's award of custody to the agency.

■ The lower court has stated that its reasons for granting custody to the Agency are the same as its reasons for denying the adoption. In *In Re: Hernandez,* 249 Pa.Superior Ct. 274, 376 A.2d 648 (1977), this Court discussed the differing natures of an adoption order and a custody order. While an adoption order is final, a custody order is always subject to modification upon a showing of changed circumstances. Therefore, the burden on a third party seeking custody of a child should not be so heavy as when a third party seeks to adopt a child. 249 Pa.Superior Ct. at 283, 376 A.2d at 653.

■ While § 502 of the Adoption Act does not set out any guidelines to be followed in determining custody when an adoption has been denied, courts have uniformly applied the traditional child custody case analysis, i.e. the "best interest of the child". *In Re: Adoption of Farabelli,* 460 Pa. 423, 433, 333 A.2d 846, 851 (1975). Here, the custody dispute is between two third parties, the step-grandmother and the state. In such a case, no distinction is made between related and non-related third parties. The burden of proof is allocated equally and the party who presents a preponderance of evidence will prevail. *In Interest of Tremayne Quame Idress R.,* 286 Pa.Superior Ct. 480, 429 A.2d 40 (1981).

■ In cases involving the custody of a child, the lower court must provide the appellate court with a complete record. *Rupp v. Rupp,* 268 Pa.Superior Ct. 467, 408 A.2d 883 (1979). The only evidence presented at the hearing below concerned appellant and her suitability as an adoptive par-

440

ent. We have already stated that different considerations are involved in evaluating an adoption petition and in determining custody. The fact that there may have been reason to deny the adoption does not necessarily mean that it would be in Dianne's best interest to take her from appellant and place her in the custody of the Agency. The Agency presented no evidence at all concerning where Dianne would be placed. Its representatives merely stated their conclusion that "more suitable" homes were available. This is a conclusion for the Orphans' Court Judge to make. He must have adequate information concerning the proposed alternative placement in order to determine whether such placement would be in Dianne's best interest. Therefore, the Agency must be required to present evidence, not just opinion and conclusion, that it can provide a home that would be best for the welfare of Dianne.

In determining what is in Dianne's best interest, the lower court must also consider the fact that the child has lived with appellant for almost three years, since she was two years old, and a strong bond of affection has formed between the two. There is growing concern among courts and child care experts that established relationships of young children not be disturbed. *McCourt v. Meyers*, 268 Pa.Superior Ct. 152, 407 A.2d 875 (1979); *Pamela J.K. v. Roger D.J.*, 277 Pa.Superior Ct. 579, 419 A.2d 1301 (1980). A child above the age of two may become strongly attached to one who stands in a parental relationship and who has tenderly cared for her, so that to break the bonds of affection "may result not only in the the child's unhappiness, but also in its physical injury". *Comm. ex rel. Children's Aid Society v. Gard*, 362 Pa. 85, 97, 66 A.2d 300, 306 (1949). Both sides should have the opportunity to present evidence as to the effect that a change of custody at this time would have on Dianne.

Therefore, we will remand this case for an evidentiary hearing in accordance with this opinion on the issue of custody.

Order affirmed as to the denial of the Petition for Adoption. Order granting custody to Lancaster County Children and Youth Social Service Agency is vacated and case remanded. Jurisdiction relinquished.