J-S61001-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.C.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.G., MATERNAL GRANDMOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1641 EDA 2019 |

Appeal from the Decree Entered May 1, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000174-2017,


BEFORE:   BOWES, J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                    **FILED FEBRUARY 28, 2020**

M.G. ("Grandmother"), the biological maternal grandmother of the minor child previously known as K.C.C., appeals from the May 1, 2019 decree granting the petition filed by R.G. and V.M. (collectively, "Parents") to adopt him.  The petition was filed after the Philadelphia Department of Human Services ("DHS") terminated the parental rights to the child's biological mother and father and determined that Parents fulfilled all requirements of the Adoption Act.  We quash Grandmother's appeal.

K.C.C. was born in December 2008, and adjudicated dependent on April 21, 2016, due to neglect and homelessness.  He was placed in pre-adoptive foster care with Parents, where he has remained since June 2016.  During 2017, DHS filed a petition to terminate the parental rights of the biological

_____

[*] Former Justice specially assigned to the Superior Court.

mother and father. Grandmother, who resides in Nevada, appeared at the ensuing trial and testified that she knew of the child's placement in foster care since September 2016, and was informed that she could not participate in the dependency proceedings unless she filed a motion to intervene, which she neglected to do. N.T., 3/19/18, at 180-81. Likewise, notwithstanding the family court's on-the-record clarification that Grandmother still had not attempted to intervene in either of the underlying proceedings,[1] Grandmother failed to petition the family court to intervene in the termination of parental rights proceedings at that juncture. *Id*. at 180-81.

On March 19, 2018, the family court entered separate decrees involuntarily terminating the parental rights of both birth parents. The decree relating to birth mother stated unambiguously, "The adoption of [K.C.C.] may continue without further notice to or consent of [birth mother.] The custody of [K.C.C.] is hereby transferred to [DHS], an approved agency that is hereby authorized to give consent to the adoption of [K.C.C.]" Decree of Involuntary Termination of Parental Rights, 3/19/18, at 2.

Grandmother did not seek to intervene in the adoption or the dependency proceeding. Birth father declined to appeal the termination of parental rights. This Court affirmed the decree as to birth mother on

_____

[1] While dependency proceedings under the Juvenile Act and the involuntary termination of parental rights under the Adoption Act are distinct actions asserted under the authority of different statutes, the same trial judge typically presides over both matters. Herein, unless noted otherwise, we refer to the collective jurisdiction as the family court.

November 6, 2018, and the High Court denied allowance of appeal two months later. *See Interest of K.C.C.*, 201 A.3d 833 (Pa.Super. 2018) (unpublished memorandum), *appeal denied*, 200 A.3d 938 (Pa. 2018).

Throughout spring 2019, Parents completed the necessary prerequisites to adopt K.C.C., and, on April 4, 2019, the couple filed a formal petition for adoption. Grandmother did not seek to intervene or file a competing adoption petition. Following a brief hearing on May 1, 2019, the family court entered the adoption decree directing, *inter alia*, that K.C.C. "shall have all the legal rights of a child and heir of [Parents] . . . [and] . . . that said [c]hild shall be known by the name of [R.E.G., Jr.]" Decree of Adoption, 5/1/19. On May 31, 2019, Grandmother, who had not intervened in the adoption proceedings, filed the instant appeal from the adoption decree.[2] No actual party to the adoption sought to appeal.

Grandmother complied with Pa.R.A.P. 1925(a)(2)(i) by contemporaneously filing a concise statement of errors complained of on

---

[2] Grandmother asserts that she filed a custody complaint and a motion to intervene in the dependency proceedings on May 13, 2019, and she attached a copy of that filing in a post-appeal submission to this Court. However, since the instant appeal involves an adoption decree that does not implicate the dependency proceeding in any matter, the dependency record is not included in the certified record transmitted on appeal. Thus, we do not consider Grandmother's post-appeal dependency filings. *See Commonwealth v. B.D.G.*, 959 A.2d 362, 372 (Pa.Super. 2008) (*en banc*) ("our review is limited to those facts which are contained in the certified record and what is not contained in the certified record does not exist for purposes of our review.") (cleaned up).

appeal with her notice of appeal. The statement asserted that DHS obstructed Grandmother's prior attempt to be considered as a placement resource for K.C.C. under the Interstate Compact on the Placement of Children ("ICPC"), 62 P.S. § 761. Finding the initial filing "vague and insufficient," the family court ordered Grandmother to file a more specific Rule 1925(b) statement. Family Court Cover Letter, 6/11/19.[3] Grandmother timely filed a supplemental Rule 1925(b) statement invoking our High Court's holding in *In re Adoption of Hess*, 608 A.2d 10 (Pa. 1992), which we discuss *infra*, and sections of the Pennsylvania Child Custody Law to buttress her assertion of standing to appeal the adoption decree and to assail DHS's efforts during the dependency proceeding. The family court's laconic opinion in response to Grandmother's five-page supplement highlighted that Grandmother was not a party to the adoption proceedings, and that her failure to attain intervenor status in that matter foreclosed her appeal.

On July 10, 2019, this Court issued a rule directing Grandmother to show cause within ten days "as to her standing to appeal the May 1st Decree of Adoption" because "[she] was not a participant in the adoption proceedings." Order, 7/10/19, at 1. Grandmother timely filed a response that was docketed on July 22, 2019. In sum, she maintained that she had "Grandparent Standing Pursuant to the Custody Act and Caselaw" that

_____

[3] The adoption decree was entered by a different family court judge who was not aware of Grandmother's ephemeral involvement in the dependency and adoption proceedings.

permitted her to intervene in an ongoing adoption proceeding. Significantly, she did not attempt to explain how those authorities granted her standing to appeal from a decree that was entered in a case in which she was not a party. Two days after receiving the response, this Court discharged the rule to show cause, but emphasized that we could revisit the propriety of Grandmother's appeal prior to confronting the merits of her entreaties.

Grandmother presents the following questions for our review:

I. Were [Grandmother's] rights violated because DHS, [community umbrella agency ("CUA")] and the [family c]ourt failed to recognize [Grandmother's] standing as a grandparent [under the child custody law]; by not allowing her to present her argument that her involvement in her Grandson's life as kinship foster and/or adoptive parent would be in the best interests of the child? . . . Further, were the actions of a CUA employee . . . who demonstrated bias against Grandmother, so egregious as to constitute an abuse of power and potentially (through a material omission) directly or indirectly influenced the trial court's consideration of [Grandmother] as a viable foster or adoptive parent?

II. Were [Grandmother's] rights as a grandparent violated under the Adoption. . . Act . . . and that portion of the Domestic Relations Act relating to Child Custody . . .; by DHS's and CUA's failure to meet their obligations to engage in family findings and to consider Appellant as a viable kinship foster and/or adoptive parent for her Grandson; and by the [family] court's failure to adequately inquire about DHS/CUA efforts being undertaken to meet their due diligence requirements . . . and failure to consider recommendations contained in the Pennsylvania Dependency Benchbook?

Grandmother's brief at 3. On August 28, 2018, we granted the petition to intervene filed by DHS, who opposed Grandmother's appeal. Similarly, the

guardian *ad litem* filed a brief requesting that we dismiss the appeal due to Grandmother's lack of standing to appeal from the adoption decree.

First, we must determine whether Grandmother has standing to appeal from the adoption decree that was entered thirteen days before she first sought to intervene in the separate dependency proceeding, which has since been closed. Grandmother's argument is threefold. Initially, she invokes **In re Hess**, **supra**, in support of her position that she has a right to appeal the adoption decree notwithstanding her failure to intervene in the underlying adoption proceeding. Grandmother's brief at 18-20. Next, Grandmother reiterates her assertion that the Child Custody Law conveyed standing to participate in the adoption and dependency cases. **Id**. at 21-22. Finally, Grandmother assails DHS for what she characterizes as the agency's abject failure to engage in family finding during the dependency proceedings. **Id**. at 22-24. We address Grandmother's arguments *seriatim*, and for the reasons discussed below, find them unavailing.

Absent statutory exceptions that are not relevant to this appeal, Pennsylvania Rule of Appellate Procedure 501 explicitly requires an appellant to be a party to the matter on appeal. Pursuant to Pa.R.A.P. 501, "[e]xcept where the right to appeal is enlarged by statute, any party who is aggrieved by an appealable order . . . may appeal therefrom." The Pennsylvania Judicial Code defines "party" as a "person who commences or against whom relief is sought in a matter." 42 Pa.C.S. § 102. Although not specifically identified in

Rule 501, a nonparty who attained intervenor status in the trial court pursuant to Pa.R.C.P. 2327, also has a right to appeal from an appealable order. *See* Pa.R.C.P. 2330(a) ("After the entry of an order allowing intervention, the intervener shall have all the rights and liabilities of a party to the action.") However, this Court will quash an appeal filed by a nonparty who failed to intervene in the trial court proceeding. *In re Barnes Foundation*, 871 A.2d 792, 794 (Pa. 2005).

In *In re Barnes Foundation*, our Supreme Court addressed the propriety of an appeal with a similar procedural posture. Exercising its extraordinary jurisdiction, the Supreme Court quashed an appeal filed in the Superior Court by a nonparty who had not attained intervenor status in the trial court. In brief, the High Court declared, "We hold that [the appellant's] failure to attain intervenor status before the orphans' court foreclosed his ability to file a cognizable appeal relative to the court's final decree." *Id*. at 795.

Grandmother's attempt to distinguish *Barnes Foundation* from the instant appeal is unconvincing. Grandmother's discussion of that binding authority ignores the High Court's explicit holding and focuses, instead, on what she depicts as the *Barnes Foundation* trial court's consideration of whether the petitioners were aggrieved parties. *See* Grandmother's brief at 16. Significantly, our review of the Supreme Court's published opinion does not disclose the language that Grandmother quotes in her brief, and to the

- 7 -

extent that Grandmother lifted the rationale of the trial court in **Barnes Foundation** from a different source, that trial court's discussion is entirely irrelevant to the propriety of this appeal. Hence, we reject Grandmother's attempt to obscure the Supreme Court's unambiguous holding in **Barnes Foundation**. Borrowing from the High Court, "[w]e hold that [Grandmother's] failure to attain intervenor status before the [family] court foreclosed h[er] ability to file a cognizable appeal relative to the court's final decree." **Barnes Foundation**, **supra** at 795; Pa.R.A.P. 501.

Grandmother's reliance upon **In re Hess** is also inapposite. In contrast to Grandmother, the grandparents in **In re Hess** filed, *inter alia*, a petition to intervene and to stay adoption proceedings in the trial court. The petitions were filed following the termination of parental rights, but prior to the entry of the final adoption decree. The orphans' court dismissed the petition to intervene summarily, and we "reversed the trial court's order, stayed the adoption proceedings, and remanded the matter to the trial court for hearings on the grandparent's petition[.]" **In re Hess**, **supra** at 12. Our Supreme Court affirmed, citing Pa.R.C.P. 2327 governing intervention in a cause of action. Rule 2327 provides in relevant part, "At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if . . . (3) such person could have joined as an original party in the action or could have been joined therein." Pa.R.C.P. 2327(3). Hence, mindful of the importance of the existing grandparent-child

- 8 -

relationship, the Supreme Court concluded that intervention was permissible even though the biological parents rights had been terminated and the agency who maintained legal custody of the children opposed the grandparents' participation. *In re Hess*, *supra* at 14-15.

Notwithstanding Grandmother's protestations to the contrary, the principle that the Supreme Court discussed in **Hess** regarding the primacy of familial relationships does not impact Grandmother's instant attempt to appeal the final adoption decree in contravention of Pa.R.A.P. 501. Regardless of whether Grandmother could have intervened in the prior proceeding, she did not and, therefore, she is not a party with standing to appeal the adoption decree. The Supreme Court's reasoning in **Hess** does not alter this fact.

Next, we address Grandmother's attempt to invoke the Child Custody Law as a ground to establish standing in this appeal, and we reject it as wholly inapt. Chiefly, the Child Custody Law does not transform Grandmother into a party under Rule 501. *See* Pa.R.A.P. 501; *see also Barnes Foundation*, *supra* at 795. The standing provisions outlined in the Child Custody Law concern the initiation of "an action under [that] chapter," *see* 23 Pa.C.S. § 5325, *i.e.*, "disputes relating to child custody matters." 23 Pa.C.S. § 5321. Plainly, the Child Custody Law does not confer standing in adoption proceedings under the Adoption Act or bestow party status in dependency proceedings pursuant to the Juvenile Act. In reality, if the Child Custody Law has any tangential relevance to adoptions, it would stem from the fact that

the best interest of the child is the polestar of both statutes, even though the discrete best-interest determinations no longer overlap.[4]

Finally, while Grandmother complains that DHS and the CUA interfered with her consideration as a placement resource during the prior dependency proceeding, our scope of review of the adoption decree is limited to the testimony and evidence adduced during the adoption hearing. *In re Adoption of Farabelli*, 333 A.2d 846, 849 (Pa. 1975) ("scope of our review on this issue is limited to consideration of the testimony and the determination as to whether the Court's findings are supported by competent evidence"). An adoption and an adjudication of dependency are distinct proceedings that are listed at separate docket numbers and authorized by different statutes. As Grandmother did not appeal an order in the dependency case, that record is not before us in this appeal. *See Commonwealth v. B.D.G.*, 959 A.2d 362, 372 (Pa.Super. 2008) (*en banc*) ("[O]ur review is limited to those facts which are contained in the certified record and what is not contained in the certified record does not exist for purposes of our review.") (cleaned up). Thus, to the extent that Grandmother challenges the merits of the prior

---

[4] Prior to January 2, 2011, the effective date of the new Child Custody Law, the best interest considerations in adoption cases and child custody cases were identical, *i.e.*, a case by case weighing of all factors which bear upon the child's physical, intellectual, moral, and spiritual well-being. *See In re Adoption of A.S.H.*, 674 A.2d 698, 700 (Pa.Super. 1996). In 2011, our legislature enumerated specific factors for trial courts to consider when awarding custody of a child under that statute. 23 Pa.C.S. § 5328. The relevant portions of the Adoption Act remain unaltered.

decisions of DHS and CUA, we cannot address the merits of those decisions herein.

In sum, all of the foregoing arguments fail for the identical reason: Grandmother was not a party to the adoption or the now-closed dependency, and she never sought to intervene prior to the entry of the final adoption decree. Grandmother simply does not differentiate between her theoretical standing to participate in the family court proceedings and her lack of standing to appeal a final decree to this Court that was entered in an action to which she was not a party and did not seek to intervene. Accordingly, we quash the appeal. **See** Pa.R.A.P. 501; **Barnes Foundation**, **supra** at 975 (failure to attain intervenor status before trial court foreclosed ability to appeal court's final decree).

Appeal quashed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/20

- 11 -