## ORDER

**In re: J.B.**

*Perry S. Patterson,* for petitioner.
*John B. Leete,* for respondent.

FINK, *P.J.,* June 18, 1982—There is here presented a contested issue of involuntary termination of parental rights of the father by petition of the mother of a male child born June 22, 1976. This court made some 36 findings of fact to which allusion will hereafter be made where relevant.

A succinct statement of facts are that the parents who are the parties to this action separated prior to May 22, 1977 when the child was less than one year old. The child went with the natural mother and within a two month period after divorce, the natural mother remarried. Both parents since the time of their marriage to the date hereof have at all times lived within a few miles of one another in Potter County, Pa. The post-divorce agreement as to visitations was never made clear as between the parties although it was understood that it would not be good for the child to visit his father at his residence as the natural father lived at his place of business which was a bar and restaurant within

Coudersport Borough. The natural father was, therefore, relegated to visitations either a few hours a day off the premises or at the residence of the natural mother, who had remarried, or at the residence of the parents of the natural mother. Respondent found the latter two situations most uncomfortable and, therefore, only pursued a few visitations up to December of 1978 and thereafter ceased visitations pursuant to a court order because it was "so uncomfortable." The child, for the last four years prior to hearing, has been going by the last name of Rimel (last name of natural mother as remarried). Based upon the fact that the father has not visited the child in the last four and one-half years, the child does not know respondent as his natural father. The natural father at all times paid the minimal support as mandated by the court, which adopted the agreement of the parties thereto as its order, and, additionally, voluntarily increased the payments and voluntarily purchased a $50 Government bond and a $25,000 life insurance policy for his son.

In determining whether or not the parental rights of the father should be relinquished by judicial mandate, we are given certain statutory guidelines. The previous statutory mandate set forth as of April 4, 1925, P.L. 217 as amended stated in its relevant part that, "The consent of a parent . . . who has abandoned the child, for a period of at least six months, shall be unnecessary, provided such fact is proven to the satisfaction of the court . . . . in which case such court or judge shall so find as a fact; . . . " The statute defines "abandonment" as "conduct on the part of a parent which evidences a settled purpose of relinquishing parental claim to the child and of refusing or failing to perform parental duties", 1 P.S., §1.

The above has been repealed by the Act of July 24, 1970, P.L. 620 known as the Adoption Act, which says in its pertinent part that the parental rights may be terminated on the ground that "the parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child, or has refused or failed to perform parental duties . . .", 1 P.S. §311.

The above cited section of the Adoption Act was reinstated verbatim by the Adoption section of the Pennsylvania Consolidated Statutes, 23 Pa.C.S.A., §2511 et seq. The Consolidated Statutes, however, offer additional grounds for involuntary termination, the only possibly relevant one being Section 2511(a)(2) which reads as follows:

"The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent."

(All cases cited by both counsel are under the old statutes and do not encompass the consolidated statute coverage on the issue of involuntary termination of parental rights.) It is, therefore, incumbent upon this court to see whether or not the parental rights of the respondent herein should be terminated either under the alternative standards of Section 311 of the Adoption Act or under the additional possibly relevant Section of the Consolidated Statutes.

As to the alternative standards under Section 311 of the former Adoption Act, this court finds that the facts do not evidence "a settled purpose of relin-

quishing parental claim to a child." The strongest case provided by the respondent was Vaders Adoption Case, 444 Pa. 428, _____ A. 2d _____ (1971) decided under the old Act of 1925. If the facts in the Vaders case did not evidence such a settled purpose of relinquishment, then certainly the facts herein do not, for in the instant case respondent not only agreed to support and comply with the agreement but voluntarily increased the amount of support and purchased a small bond and a substantial life insurance policy for the child as well.

It is true that although the natural father lived but a few miles distant from his son, he did not, in fact, effectuate a visitation since December of 1978 thereby causing his identity and relationship with the child to fade beyond recognition in the memory of his son. Such failure on the part of respondent-herein raises the question of whether or not the allegation under Section 311 should not be found, viz., that the natural father has refused or failed to perform parental duties. There is no question that the duties of a parent go far beyond the mere providing of monetary means with which the child must be supported and encompasses such ordinary parental duties as parental guidance and instruction, physical presence and physical touching demonstrating affection, being a listener as well as an instructor, and guiding the child through emotional distress, physical harm and discomfort.

This court is of the opinion, however, that parental rights should not be dissolved as punishment or retribution but only upon a clear showing that the statutory guidelines for relinquishment have undoubtedly been met. It is the thought by this court that the language of Section 311 of the Adoption Act of 1970 would dictate that parental rights should be terminated only in cases where one pa-

rent completely ignored the existence of his or her child or acknowledged the existence of the child only after compulsion or judicial mandate, such as paying support only because if it were not paid the parent would be found in contempt of court and faced possible incarceration.

In the instant case it is clear that respondent paid support because he wished to uphold that portion of his parental duties and not because of the possibility of facing the consequences of judicial contempt. Furthermore, this court found that from the time of the separation of the parties hereto up until recently the natural father was undergoing the throes of emotional trauma and financial distress. Respondent did not exert himself, however, toward visitations or toward piercing the apparent newly-found domestic tranquility of petitioner by interjecting himself into her recent family life so that he could enjoy visitations with his son.

We, therefore, find that under Section 311 of the Adoption Act of 1970, respondent did not evidence a settled purpose of relinquishment or were his actions or inactions sufficient to conclude that he refused or failed to perform parental duties.

We now look at the additional possibility of termination of parental rights as set forth in the appropriate Section of the Consolidated Statutes above mentioned which speaks in terms of "incapacity, abuse, neglect or refusal." The terms "incapacity" and "abuse" are not here applicable and so we look to the last two terms, "neglect" or "refusal." Without any question, the natural father did, in fact, neglect his son to a certain extent for a substantial period in time, and it could, therefore, well be said that he *refused* to perform a certain measure of parental duties. However, neither his neglect or refusal would, in fact, "cause the child to be with-

out essential parental care, control or subsistence necessary for his physical or mental well-being." Respondent did, in fact, somewhat belatedly inquire of the Domestic Relations Office of Potter County concerning his visitation when his change of circumstances was such that he apparently felt capable of effectuating proper visitations. It was indicative of respondent's concern for the welfare of his child when in 1979, after petitioner and her husband suffered the loss of their home by fire, respondent contributed $250 toward reestablishment of their home which, not coincidentally, was the home of his son.

The fact that petitioner used Rimel for J.B. last name since December of 1978 which may cause substantial difficulty hereafter is of concern to this court. Petitioner made this decision to use her present husband's last name, which was certainly a chance or gamble, and therefore, must accept a judicial determination for whatever the consequences.

In conclusion, this court observes that both respondent and his son have lost forever the value of what their relationship could and should have been for the last four and one-half years. This court further observes that what is or will be in the best interests of the child as far as termination of parental rights is concerned is of no moment as to the issues presently before the court. There is little question that respondent should have exerted himself as the parent of J.B. and he has been a poor father for the last four and one-half years, however, it is the finding of this court based upon the facts and the law as is understood by this court that the parental rights of respondent should not be terminated and, thus, the following

## ORDER

And now, June 18, 1982, the petition for involuntary termination of parental rights of the natural father is hereby denied.